**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| NBCCAT CORPORATION and, REMARE TRANSPORTATION CORPORATION, | ) | Case No. 05 B 18546 Jointly Administered |
| | ) | Hon. A. Benjamin Goldgar |
| Debtors. | ) | |
| | ) | |

**FINAL ORDER AUTHORIZING THE DEBTORS TO (i) FACTOR ITS ACCOUNTS RECEIVABLE AND TO INCUR DEBT PURSUANT TO A POST-PETITION FACTORING AGREEMENT AND RELATED DOCUMENTS, (ii) GRANT SUPER PRIORITY SECURITY INTERESTS AND ADMINISTRATIVE PRIORITY; (iii) AUTHORIZE USE OF CASH COLLATERAL; AND (iv) GRANT ADEQUATE PROTECTION FOR USE OF CASH COLLATERAL**

UPON CONSIDERATION of the Debtors' Motion for Final Order Authorizing The Debtor to (i) Factor its Accounts Receivable and to Incur Debt Pursuant to A Post-Petition Factoring Agreement and Related Documents, (ii) Grant Super Priority Security Interests and Administrative Priority; (iii) Authorizing Use of Cash Collateral; and (iv) Granting Adequate Protection for Use of Cash Collateral (the "Motion"); and the Court having jurisdiction to hear the Motion; and it appearing that sufficient notice of the Motion has been given; and it appearing that the relief requested by the Motion is in the best interests of the Debtor's estate; and good cause having been shown, it appears to the Court as stipulated by the Debtors and Systran as follows:

A. On May 10, 2004 (the "Petition Date"), the Debtors commenced their reorganization cases by filing voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), in the United States

Bankruptcy Court for the Northern District of Illinois (the "Court"). Subsequent to the Petition Date, the Debtors' cases were consolidated for administrative purposes.

B. The Debtors are operating and managing their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

C. No official committee of unsecured creditors has been appointed in these cases.

D. Systran, a subsidiary of Textron Financial Services Corporation, is in the business of purchasing accounts receivables.

E. The Debtors and Systran are parties to that certain pre-petition factoring agreement dated December 11, 2002 (the "Receivables Agreement"), pursuant to which, among other things, Systran purchased pre-petition accounts receivables (the "Pre-Petition Accounts Receivable") from the Debtors.

F. Pursuant to the Receivables Agreement, as security for the timely payment and performance of certain of the obligations of the Debtors to Systran, the Debtors granted Systran a first priority, perfected security interest in, among other things, all of the Debtors' Pre-Petition Accounts Receivable, all collections and right to payments from payors of such receivables, and all cash and non-cash proceeds of the foregoing (the "Cash Collateral").

G. The Debtors, on behalf of themselves and their respective bankruptcy estates, stipulate that Systran has first priority, valid and perfected liens on all the Pre-Petition Accounts Receivable and Cash Collateral of the Debtors, except Cash Collateral that is identifiable proceeds of machinery, equipment and other property of the Debtors in which American United Bank & Trust ("AUBT") and MTC Holdings ("MTC") have a prior perfected and non-avoidable security interest (collectively, the "Proceeds"). In the later instance, the Debtors, on behalf of themselves and their respective bankruptcy estates, stipulate that Systran has valid and perfected

liens on all the Proceeds subject only to any prior perfected and non-avoidable security interest of AUBT and/or MTC, if any.

H. As of the Petition Date, Systran had purchased at least $1,409,147.80 of Pre-Petition Accounts Receivable from Remare Transportation Corporation and at least $802,191.11 of Pre-Petition Accounts Receivable from NBCCAT Corporation, which had yet to be collected.

I. The Debtors' cash flow is largely dependent on the factoring of their post-petition accounts receivable and any pre-petition accounts receivable not previously collected or sold to any third party, (collectively the "Post-Petition Accounts Receivable"). Without a court-approved post-petition factoring agreement, the Debtors will be unable to pay for such critical expenses such as payroll, supplies, and taxes.

J. The Debtors have an immediate need for a post-petition factoring agreement to: (i) minimize the disruption of their businesses and daily operations; (ii) manage and preserve estate assets; and (iii) increase the likelihood of a successful reorganization. In this regard, it is essential that the Debtors be able to factor the Post-Petition Accounts Receivables (collectively, with the Pre-Petition Accounts Receivable, the "Accounts Receivable"). Neither Accounts Receivable nor rights to payment have previously been sold or otherwise factored by the Debtors to any other person or entity.

K. Without the sale of the Post-Petition Accounts Receivable and rights to payment thereto on an ongoing basis, the Debtors would have no timely source of adequate operating funds. Thus, the proposed Factoring Agreement with Systran is necessary, essential, and appropriate to prevent immediate and irreparable harm to the Debtors, their respective estates, employees, and creditors.

L. The Debtors have, on an interim basis pursuant to this Court's May 12, 2005 Order, entered into the Factoring Agreement, in the form attached hereto as Exhibit A, with Systran pursuant to which the Debtors will (i) sell to Systran the Post-Petition Accounts Receivables and all rights to payment thereto, and (ii) in order to secure their obligations to Systran under the Factoring Agreement, to grant Systran a super-priority lien on substantially all of the assets of each of the Debtors, including without limitation, all Post-Petition Accounts Receivables and all rights to payment, whether or not purchased, and the proceeds, products and offspring thereof, including cash.

M. Systran is presently unwilling to purchase the Debtors' Post-Petition Accounts Receivable and rights to payment without being afforded the final protections provided by 11 U.S.C. §§ 363(b) and (m); 364(c)(1) and (2), and, 364(d), and the entry of this Order.

**THE COURT THEREFORE FINDS:**

N. Under the circumstances, the Court finds that the Debtors are unable to procure other financing, in sufficient amounts and on a timely enough basis, whether in the form of unsecured credit allowable under 11 U.S.C. § 502(b)(1) as an administrative expense, or in exchange for the grant of an administrative expense priority pursuant to 11 U.S.C. § 364(c)(1)

O. Good and adequate cause has been shown for the relief requested in the Motion. Entry of this Order is in the best interests of the Debtors, their creditors, and the estates because the Factoring Agreement will (i) minimize the disruption to the Debtors' business and on-going operations, (ii) increase the probability that the Debtors will achieve a successful reorganization, (iii) preserve the Debtors' assets, goodwill, and reputation, and (iv) avoid immediate and irreparable harm to the Debtors and their estates.

P. The terms and conditions of the Factoring Agreement and this Order are fair, just, and reasonable under the circumstances and reflect the exercise of the Debtors' prudent business judgment, consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

Q. The Factoring Agreement and this Order have been negotiated in good faith and at arms-length by and between the parties, with all parties represented by counsel. Accordingly, factoring provided by Systran pursuant to this Order shall be deemed to have been extended or provided in good faith under 11 U.S.C. §§ 364(e) and (m) and Systran is a good faith purchaser of the Accounts Receivable pursuant to 11 U.S.C. §§ 363(m).

Based upon the foregoing and upon the record made before the Court; and good and sufficient cause appearing therefore;

**IT IS HEREBY ORDERED** that:

1. Pursuant to the terms and conditions of this Order, the Motion is granted.

2. The Debtors are authorized to execute and perform their post-petition Obligations (hereinafter defined) under the Factoring Agreement (the "Factoring Agreement") in the form attached hereto as Exhibit A, and, except as set forth herein, all of the provisions of the Factoring Agreement are hereby fully and completely ratified and confirmed, including but not limited to the provisions in the Factoring Agreement concerning control and direction of payments on the Debtors' Post-Petition Accounts Receivable. The purchases, advances, and all other indebtedness and obligations incurred by the Debtors to Systran from and after the Petition Date, of every nature and however arising, absolute or contingent, direct or indirect, including without limitation, all charge backs, all regular and default interest, early termination premiums, and discount fees as described in the Factoring Agreement, and other

reasonable fees, charges, costs, and expenses incurred by Systran in connection therewith, are referred to herein and hereinafter as the "Obligations."

3. Without limiting the generality of the foregoing, the Debtors are authorized (i) to sell its Post-Petition Accounts Receivable to Systran under and as contemplated in the Factoring Agreement, (ii) to incur additional financial and/or monetary Obligations to Systran under and as contemplated in or related to the Factoring Agreement. The aspects of the Factoring Agreement and the program set forth therein that constitute terms for the sale of property of the estate are approved pursuant to Section 363 of the Code and the ten (10) day stay on this Order approving any such sale is waived pursuant to Bankruptcy Rule 6004(g).

4. As security for the Debtors' performance of the Obligations under the post-petition Factoring Agreement, Systran is hereby granted, pursuant to 11 U.S.C. Section 364(c) and (d):

(a) A validly perfected and non-avoidable super-priority lien and security interest, (the "Systran Liens"), on all the Receivables whether or not purchased, together with all accounts, chattel paper, documents, instruments, letter of credit rights, supporting obligations, deposit accounts, and general intangibles arising from or related thereto, and all of the cash and non-cash proceeds, products, and offspring of the foregoing, all present and future Bill(s) and Special Purchase Bill(s) as defined the Factoring Agreement, accounts, inventory, deposit accounts, chattel paper, contract rights, insurance contracts and proceeds, general intangibles, choses in action, equipment (including, without limitation vehicles, tractor and trailers), instruments, real estate and fixtures, and documents, and the proceeds of the foregoing, including proceeds in the form of inventory and/or equipment, whether tangible or intangible, wherever located together with any and all cash and non-cash proceeds and products and accessions of the foregoing (collectively, the "Collateral"). The Systran Liens shall be validly perfected non-avoidable super priority liens on all Collateral pursuant to 11 U.S.C. Section 364(d); provided however, the Systran Liens on equipment, real estate and fixtures (the "Liened Collateral") that is subject to prior liens of Systran and/or non-avoidable

liens, if any, of any other party pre-existing as of the Petition Date shall be junior only to such pre-existing liens on the Liened Collateral and only to the extent such pre-existing liens are validly perfected and non-avoidable; and

(b) A superpriority administrative expense afforded by 11 U.S.C. § 364(c)(1), with priority over all other claims and administrative expenses of any kind, including those specified in sections 503(b) and/or 507(b) of the Bankruptcy Code, and subject to statutory fees owed to the office of the United States Trustee.

Notwithstanding the above, the Systran Liens granted to Systran post-petition on all existing machinery and equipment, fittings and fixtures and articles of personal property, as well as proceeds derived therefrom, are subject to and do not prime the liens and security interests of AUBT and MTC existing as of the Petition Date that are validly perfected and non-avoidable.

5. Except as otherwise provided herein, the Debtors are authorized to and shall make all payments, chargebacks, and transfers of property to Systran or for the benefit of Systran as provided, permitted, or required under the Factoring Agreement and the Receivables Agreement. Systran is further authorized to collect its Pre-Petition Accounts Receivable and apply such collected amounts against any pre-petition obligations of the Debtors under the Receivables Agreement. In addition, all proceeds of the Collateral which are collected by Systran may be applied by Systran to first reduce the Debtors' obligations under the Receivables Agreement and then to reduce any remaining Obligations of the Debtors under the Factoring Agreement.

6. Systran shall not be required to file financing statements, mortgages, security agreements, or other instruments in any jurisdiction or take any other action in order to create, validate, perfect or maintain the security interests, liens, or mortgages (or the priority established by this Order of any thereof) in the Collateral granted to it hereunder, all of which are hereby deemed valid, perfected and enforceable upon entry of this Order against all creditors (whether secured or unsecured) of and purchasers from the Debtors and other parties-in-interest. If

Systran, in its sole discretion, chooses to file such financing statements, mortgages, security agreements or other instruments, or to otherwise confirm the creation, perfection or priority of such security interests and liens, all such financing statements, mortgages, security agreements or similar instruments shall be deemed to have been filed or recorded as of the Petition Date and the Debtors shall, at their own expense, execute and deliver to Systran, for recording (where appropriate), all agreements, financing statements, mortgages, instruments, and other documents as Systran may request to create, evidence, confirm, validate, perfect or maintain the security interests and liens (and the priority thereof) in the Collateral. Should Systran deem it appropriate, in its sole and exclusive discretion, Systran may file or record a copy of this Order in any local, state or federal office.

7. This Order shall serve as authority to the Debtors' account debtors (the "Obligors") obligated on all Post-Petition Accounts Receivable and Pre-Petition Accounts Receivable to honor any requests for payment or notice of assignment made to them by Systran. Should any of the Obligors remit payment to the Debtors directly on account of the accounts receivable purchased by Systran, the Debtors shall hold in escrow for the benefit of Systran any payment on, distribution of proceeds relating to the same, whether such payment, distribution of proceeds are in the form of cash property, or of any other kind or character, and shall immediately pay over and deliver to Systran such distribution or payment incorrectly made to the Debtors (the "Escrow").

8. Pursuant to 11 U.S.C. § 363, the sale of the Debtor's Post-Petition Accounts Receivables shall be free and clear of all liens, claims, encumbrances and interests, other than the Systran Liens. The liens of secured creditors, if any, shall attach solely to the proceeds of such

sale, subject to the Systran Liens, in the order of priority as their valid liens and security interests may have existed immediately prior to the Petition Date and subject to any and all claims, rights, interests or defenses claims or which may be asserted by the Debtors or any other party in interest with respect to the validity, priority, scope, and amount of any claims and security interests and liens asserted by any of secured creditor. Nothing in this Order shall purport to affect the priority of any of the liens of the Internal Revenue Service, Systran, AUBT and MTC, to the extent validly perfected and non-avoidable, which pre-existed as of the Petition Date.

9. Subject only to the provisions of paragraph 4 and 9 above (non-avoidable liens as of the Petition Date), the Systran Liens on account of post-petition obligations shall be senior to, and shall not be subordinated or made equal to any lien, security interest, mortgage, or any other interest in favor of any party by any order of the Court or otherwise, including without limitation, liens or interests: (a) authorized in connection with the use of the Cash Collateral under 11 U.S.C. § 363(b); (b) granted in connection with the obtaining of credit or incurring of indebtedness under 11 U.S.C. § 364(c); (c) recognized as senior under 11 U.S.C. § 510; (d) provided pursuant to an order confirming a plan of reorganization; <u>unless</u> (x) Systran shall have given its express prior written consent, which shall not be implied from any other action, inaction, or acquiescence by Systran; or (y) the order providing for such lien, interest, or subordination is conditioned upon prior full satisfaction of the Obligations and any pre-petition claim of Systran before any such lien, interest or subordination is effective.

10. An event of default under this Order ("<u>Event of Default</u>") shall include any of the following:

(a) The occurrence of an event of default under the Factoring Agreement;

(b) The Debtors' failure to perform or satisfy any of the terms, conditions or covenants of this Order;

(c) The Debtors' filing, support, or confirmation of a Chapter 11 plan of reorganization in this bankruptcy case that does not provide for the prior full satisfaction of the Obligations on or before the "effective date" of the plan, unless otherwise agreed to in writing by Systran;

(d) The termination of the factoring under the Factoring Agreement by its own terms or operation of law;

(e) The foreclosure, liquidation, levy, or similar act by any party with respect to any material portion of the Collateral;

(f) The dismissal of any one or all of these bankruptcy cases;

(g) The conversion of any of these bankruptcy cases to a case under another chapter of this Bankruptcy Code;

(h) The stay, modification, amendment, vacating, or reversal of any term of this Order or the Factoring Agreement, or any of the rights and acknowledgments conferred thereunder;

(i) The commencement or continuation of, or voluntary participation by, any of the Debtors in any lawsuit, adversary proceeding, or contested matter against Systran; and

(j) The commencement or continuation of any nonfrivolous action or process by another party with respect to a material portion of the Collateral or the Obligations.

(k) Any of the Debtors fail to comply with the provisions set forth in the Budget annexed hereto at Exhibit B in any material respect (and any 10% deviation in any individual

line item set forth in the Budget is hereby deemed to be a material deviation, unless such deviation is agreed upon in writing by Systran).

11. Upon occurrence of an Event of Default, Systran shall provide the Debtors and counsel to the Debtors with a notice of such Event of Default via fax (the "Default Notice"). Upon Debtor's receipt of the Default Notice, and to the extent such default is curable and not cured within five (5) business days, all of the following shall occur: (a) all Obligations shall be immediately due and payable; (b) all obligations to factor under the Factoring Agreement, if any, shall be terminated, which termination shall have no effect on the Systran Liens or the Obligations; and (c) the Debtors shall not have any use of any Cash Collateral without further order of the Court. For the avoidance of doubt, upon giving the Default Notice, (a) Systran shall be permitted to immediately and without notice suspend advances or factoring to the Debtors pending the Debtors cure of such defaults in a manner satisfactory to Systran, and (b) under no circumstances shall Systran be obligated to provide the Debtors with, or shall the Debtors be entitled to, access to any amounts held in escrow unless and until all of the Debtors' Obligations to Systran have been fully paid and satisfied. With respect to an Event of Default set forth in the Factoring Agreement that (i) is not an Event of Default under paragraph 10 of this Order, (ii) does not impair or affect the Collateral or payment of the Obligations, and (iii) is of a type that is curable, and the Debtors fails to cure such default within five (5) business days from the Debtors' receipt of a Default Notice, in addition to the other rights and remedies of Systran recognized herein, upon two (2) business days' notice, Systran may (x) take any and all acts to enforce its rights and remedies with respect to the Collateral; and/or (y) take any other action or exercise any or all rights and remedies available under this Order, the Factoring Agreement, or applicable law. To effectuate the purposes of the preceding sentence, the Debtors' consent in

advance to Systran petitioning the Court on an immediate or emergency basis for relief from the automatic stay as provided in Section 362 of the Bankruptcy Code.

12. The automatic stay provisions of Section 362 of the Bankruptcy Code are hereby modified to permit the Debtors to create, and Systran to record if it deems it appropriate, Systran's first priority lien position on the Collateral, including real property and to enforce any and all security interests and/or liens granted hereunder. The automatic stay provisions of Section 362 of the Code are further modified to grant Systran complete relief from the stay to enforce any and all of its rights and remedies against the Obligors as provided in the Factoring Agreement and Receivables Agreement with respect to collection of payments on Pre-Petition Accounts Receivable and Post-Petition Accounts Receivable (which have been sold to Systran)(collectively, the "Sold Receivables") directly from such Obligors; provided however, with respect to Collateral not constituting Sold Receivables the automatic stay of Section 362 of the Bankruptcy Code shall remain in effect pending further order of the Court or expiration of the stay as provided in Section 362 of the Bankruptcy Code.

13. Systran has not waived the right to provide factoring and related services to the Debtors on any other, different, or additional terms than in this Order, as authorized by further order of this Court.

14. Notwithstanding any other provision of this Order, and subject to paragraph 15 below, this Order approves the Debtors' acknowledgment and agreement that the Factoring Agreement, the Receivables Agreement, the Obligations, and the Systran Liens, are valid, enforceable, perfected, and unavoidable under the Bankruptcy Code or any other applicable law, in accordance with their terms.

15. THE DEBTORS AND THESE BANKRUPTCY ESTATES, TOGETHER WITH THEIR SUCCESSORS AND ASSIGNS, HEREBY UNCONDITIONALLY DISCHARGE, WAIVE AND RELEASE SYSTRAN FROM ANY AND ALL LOSSES, DAMAGES, CLAIMS LIABILITIES AND CAUSES OF ACTION (INCLUDING WITHOUT LIMITATION CLAIMS UNDER CHAPTER 5 OF THE BANKRUPTCY CODE), WHETHER KNOWN OR UNKNOWN, AND OF ANY NATURE OR EXTENT ARISING OR RELATING TO SYSTRAN'S RELATIONSHIP WITH THE DEBTORS, INCLUDING WITHOUT LIMITATION SYSTRAN'S PURCHASING OF RECEIVABLES PURSUANT TO THE RECEIVABLES AGREEMENT AND ENFORCEMENT OF ANY OBLIGATIONS RELATING TO THE SAME. The foregoing releases shall be binding upon the Debtors. The foregoing releases shall also be binding upon all creditors and parties-in-interest and any statutory committee authorized by the Court or appointed by the Office of the United States Trustee, provided however, the foregoing releases shall be binding upon such parties unless (a) a party-in-interest (excluding the Debtors) has filed an adversary proceeding or contested matter challenging the validity, priority, or enforceability of the Obligations or Systran Liens, or otherwise asserting any claims or causes of action against Systran on behalf of the Debtors' estates no later than the earlier of (i) sixty (60) days the Office of the United States Trustee convenes a Section 341 meeting of creditors or (ii) seventy-five (75) days from the Petition Date and (b) the Court enters a final non-appealable order in favor of the plaintiff in any such timely filed adversary proceeding or contested matter.

16. As adequate protection for the Debtor's use of Systran's Cash Collateral and for any diminution in the value of its valid liens and security interests as a result of the Debtors' use of Systran's Cash Collateral, Systran shall be, and hereby is granted, validly perfected and non-avoidable liens and security interests in the Collateral ("Replacement Lien") to the same extent and validity of Systran's lien position as it existed as of the Petition Date,

whether such Collateral has been acquired by the Debtors prior to the Petition Date or thereafter; subject only to pre-existing non-avoidable liens as of the Petition Date on the Liened Collateral and the Systran Liens, and no person or entity other than Systran shall be granted in the Debtors' bankruptcy case, a lien or security interests *pari passu* with or senior to such liens and security interest of Systran.

17. Notwithstanding the termination or expiration of this Order or any final Order related hereto, or the expiration or termination of the Factoring Agreement or Receivables Agreement, at no time shall any surcharge be imposed upon Systran or any collateral of Systran (including without limitation the Pre-Petition Accounts Receivable and Post-Petition Accounts Receivable), whether under the provisions of Section 506(c) of the Bankruptcy Code, the enhancement of collateral provisions of Section 552 of the Bankruptcy Code or otherwise.

18. If any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this Court or any other court, such stay, modification or vacatur shall not affect the validity of any Obligation of the Debtors to Systran authorized pursuant to this Order and which is incurred prior to the effective date of such stay, modification or vacatur, or the validity and enforceability of any lien, security interest or priority authorized hereunder or hereby with respect to any such Obligation of the Debtors.

19. Subject to Paragraph 15, the provisions of this Order, the rights and interests granted to Systran under the Factoring Agreement and this Order, and any actions taken pursuant hereto shall survive entry of any order which may be entered confirming any plan of reorganization or which may be entered converting this case from Chapter 11 to Chapter 7, or dismissing this or any subsequent proceeding, and the terms and provisions of this Order as well

as the liens, claims, and security interests granted hereunder (and the relative priorities thereof) shall continue in this or any superseding case under the Bankruptcy Code and such liens and security interests shall maintain their same relative priorities as provided by this Order until satisfied and discharged, notwithstanding any dismissal of this or any subsequent proceeding.

20. The provisions of this Order shall be binding upon and inure to the benefit of Systran and the Debtors and their estates and their respective successors and assigns, including any Chapter 7 or Chapter 11 trustee hereinafter appointed for any of the Debtors' estates.

21. The obligations, liens and administrative priorities provided for herein to Systran are entitled to all the benefits and protections of Section 364(e) of the Code and the sale of Accounts Receivable and/or Post-Petition Accounts Receivable to Systran as provided for herein is entitled to all the benefits and protections of Section 363(m) of the Code.

22. The Debtors shall provide Systran, AUBT, and MTC and their agents and professionals with full cooperation, information and access, during regular business hours, to the Debtors' personnel, premises, books and records as may be reasonably requested by Systran, AUBT, and MTC. The Debtors shall also provide Systran, AUBT, and MTC with copies of all monthly operating reports filed by the Debtors within three (3) days of filing, with copies to their respective counsel: Jeffery A. Deller, Esq., Klett Rooney Lieber & Schorling, 40th Floor, One Oxford Centre, Pittsburgh, PA 15219; Lauren Newman, Esq., FagelHaber LLC, 55 East Monroe Street, 40th Floor, Chicago, IL 60603; and Bruce E. Lithgow, Bell, Boyd & Lloyd LLC, 70 W. Madison Street, Suite 3300, Chicago, IL 60602, or such other addresses as the parties may designate in writing.

23. To the extent Systran or its counsel seek payment of attorneys' fees and other reasonable legal expenses as provided in their respective agreements with the Debtors, Systran or its attorneys shall first submit written application to the Debtors, Systran, AUBT, and MTC, with a copy to the US Trustee and any official committee appointed in this case. If no objection is received by Systran or its counsel within ten (10) business days of such fee request, the Debtors are authorized to pay such fees and expenses.

24. The parties specified in this Order and the parties to the documents and exhibits referenced herein expressly agree and consent to the jurisdiction of this Court to enforce all of the terms and provisions of this Order.

JUN 27 2005
Date: June ___, 2005

The Honorable A. Benjamin Goldgar
United States Bankruptcy Judge

## SYSTRAN FINANCIAL SERVICES CORPORATION POST-PETITION FACTORING AGREEMENT

This Post-Petition Factoring Agreement dated _______________, 2005 (the "Agreement"), is between SYSTRAN Financial Services Corporation, a subsidiary of Textron Financial Corporation ("SYSTRAN") and its successor or assigns and Remare Transportation Corporation (the "Customer"), whose address is set forth on the last page hereof.

**WHEREAS**, Customer is engaged in the business of transportation; and

**WHEREAS**, Customer filed a voluntary petition under Chapter 11 of the Bankruptcy Code on May 10, 2005, case no. 05 B 18551, pending in the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Case"), and is presently operating its business as a debtor-in-possession; and

**WHEREAS**, prior to the commencement of the Bankruptcy Case, Customer and SYSTRAN were parties to a Factoring Agreement dated December 13, 2002; and

**WHEREAS**, Customer has requested that Systran enter into this Post-Petition Factoring Agreement, and Systran has agreed, subject to the approval of the Court in which the Bankruptcy Case is pending (the "Bankruptcy Court");

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the parties agree as follows:

**1. DEFINITIONS**

(a) "Bill(s)" means any right to payment for services rendered or goods sold by Customer to a Debtor evidenced by a writing which complies with the general requirements of SYSTRAN as those may be set forth in the Customer Information Manual, as described in Paragraph 2.5.

(b) "Chargeback" the debit of a Bill or a "Special Purchase Bill(s)" to a Customer's account.

(c) "Commencement Date" means the date that the Customer first receives funds from SYSTRAN pursuant to the terms of the Agreement.

(d) "Commercial Account" means any non "Transportation Account".

(e) "Debtor" means a person or entity obligated to pay a Bill.

(f) "Maximum Approved Credit Line" means the amount of credit that is approved for Customer by SYSTRAN inclusive of deposit and advances against purchases of Bills that Customer's total account is not to exceed.

(g) "Maximum Debtor Credit Limit" means the maximum outstanding dollar amount and/or percentage concentration of Customer's unpaid Bills open with SYSTRAN owing by an individual Debtor and/or its affiliates at any given time under the term of the Agreement.

(h) "Minimum Anticipated Volume" means the dollar amount of Bills funded by SYSTRAN that Customer presents each month during the term of the Factoring Agreement for purchase by SYSTRAN that meet the Maximum Approved Credit Line criteria and Maximum Debtor Credit Limit(s) established from time to time at the sole discretion of Systran in connection with Customer's account.

(i) "Obligation" means all indebtedness, liabilities and obligations whatsoever and of whatever nature owed by Customer to SYSTRAN, or any of its affiliates, whether direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising and how ever evidenced or acquired, whether joint or several or joint and several.

(j) "Recourse" means the right to Chargeback a Bill(s) or "Special Purchase Bill(s)" to Customer.

(k) "Special Purchase Bill(s)" means the purchase by SYSTRAN of Customer's outstanding and unpaid Bills that have either been previously billed by Customer, financed by a lender, or sold and assigned to another company who buys Bills. Special Purchase Bills shall be subject to all provisions of this Agreement.

(l) "Transportation Account" means any Debtor doing business primarily with any aspect of the transportation industry such as freight carriers, brokers, forwarders, consolidators, and rail agents with the exception of steamship companies.

**2. PURCHASE OF BILLS**

2.1 Customer agrees to present on a monthly basis, a Minimum Anticipated Volume of Bills for SYSTRAN to purchase which shall be equal to $1,000,000.00. SYSTRAN, at its sole discretion, may purchase such Bills. Bill(s) and or Special Purchase Bill(s) shall herein collectively be referred to as "The Bill(s)". Such sales shall be absolute and unconditional, subject only to Recourse as described herein. Customer shall submit to SYSTRAN an original and one (1) copy, along with any document which SYSTRAN deems necessary, of each Bill which shall be attached to a schedule form provided by SYSTRAN. Should any Debtor require any additional documentation as a prerequisite to payment, Customer will also provide such documentation with each Bill. For a Transportation Account, Customer shall also submit one (1) copy of the respective bill of lading. The bill of lading must be signed by the Customer, the shipper, and the consignee if the consignee's signature is necessary for payment.

2.2 SYSTRAN will settle with the Customer by providing to Customer by U.S. Mail, electronic mail, or via facsimile a settlement statement setting forth The Bill(s) and/or Special Bills purchased, the amount paid, and any deductions made for fees, charges or the "Deposit" and deposit funds as follows: **[Customer shall choose one option]** ☐ Mail funds due Customer. ☐ Deliver overnight funds due Customer via Federal Express next day service air. ☐ Wire transfer funds due Customer into bank account specified by Customer on wire authorization form. ☐ Deposit funds due Customer. _________ (initials)

2.3 Any payment to Customer may be reduced by SYSTRAN by any amount due from Customer to SYSTRAN, including but not limited to the security deposit, Chargebacks, fees and costs.

2.4 SYSTRAN may give notice to the Debtors of the assignment of The Bill(s) by placing a legend on The Bill(s) stating The Bill(s) have been sold and assigned to SYSTRAN and are payable to SYSTRAN at an address designated by SYSTRAN. Customer will not attempt to direct payment to any place other than to the SYSTRAN designated address. Customer agrees to pay all costs and expenses incurred by SYSTRAN in giving such notice. All proceeds of The Bill(s) received by Customer shall be delivered immediately to SYSTRAN in the identical form of payment received by Customer. In the event that Customer collects directly from the Debtor, The Bill(s) which have been sold to SYSTRAN and Customer does not deliver immediately to SYSTRAN the identical form of payment received by Customer, Customer shall be in default hereunder and will be charged an administrative fee equal to fifteen percent (15%) of the face amount of The Bill(s) collected directly. Customer agrees that any collection directly from the Debtor by Customer of The Bill(s) which have been sold to SYSTRAN will be considered a default under the terms of this Agreement, and that in addition to the administrative fee described herein, Systran will be entitled to pursue its other remedies permitted hereunder and under applicable law.

2.5 SYSTRAN has or will provide to Customer a Customer Information Manual, which is a guide to policy and procedures concerning daily submission of The Bill(s), collection efforts, and other matters. The Customer Information Manual (the "Manual") is not part of this Agreement. The procedures set forth in the Manual are only guidelines to ensure the efficient operation of SYSTRAN's purchase of The Bill(s). SYSTRAN may change any procedure in the Manual at any time, and may choose not to follow procedures in the Manual at its discretion.



**EXHIBIT A**

3. FEE(S)

3.1 SERVICE FEE(S). Customer shall pay a fee of the face amount of all of The Bill(s) purchased by SYSTRAN as reflected on Exhibit A attached hereto (the "Service Fee(s)"). The Service Fee(s) shall be payable upon the purchase of any of The Bill(s) by SYSTRAN, and SYSTRAN may collect Service Fee(s) either from payments owed to Customer or may bill the Customer periodically. SYSTRAN may, upon prior notice to Customer, change any fee and such change shall be effective upon receipt of the notice to Customer; provided, that SYSTRAN may change the amount of any fee caused by a change in SYSTRAN's cost of funds without prior notice to Customer, but must notify Customer of such change on Customer's next settlement statement. A fee change due to a change in cost of funds will be effective upon the date of the change which will be reflected on Customer's settlement statement. If, at any time during the term of this Agreement, there is an event of default by Customer including, but not limited to, a Federal Tax Lien filed against and attaching to the property of Customer or any of its principals, and the tax lien is satisfied to allow continued funding pursuant to this Agreement, SYSTRAN shall increase all of Customer's Service Fee(s) by no less than one-half of one percent (0.5%) discount fee on the face of The Bill(s).

3.2 MINIMUM FEE. In the event that Customer fails to sell to SYSTRAN the Minimum Anticipated Volume in any month, Customer shall pay a minimum fee to SYSTRAN which shall be equal to the amount obtained when the Minimum Anticipated Volume is multiplied by the current Service Fees reflected on Exhibit "A" attached hereto and as referenced in section 3.1 above, or as amended by SYSTRAN from time to time as reflected in Customer's daily settlement statement (the "Minimum Fee"). The Minimum Fee owing by Customer pursuant to this paragraph may be deducted from Customer's funding. In the event that Customer fails to sell the Minimum Anticipated Volume per month for each of any two consecutive months (the "Low Volume Period"), Customer's Service fee will be increased at the beginning of the month immediately following the Low Volume Period at SYSTRAN's discretion. At SYSTRAN's discretion, the Service Fee will be returned to the last fee in effect should Customer's monthly purchase volume exceed the Minimum Anticipated Volume per month for each of two consecutive months.

3.3 ADDITIONAL SERVICES and VALUE FEES. From time to time during the term of this Agreement, Customer may request SYSTRAN to provide additional services and/or incur additional risk. Such additional services and/or additional risk shall include but not be limited to advances to the Customer by SYSTRAN which are not in conformity with the terms of the Agreement, extension of Customer's contractual recourse under the Agreement, purchases by SYSTRAN of bills which are outside of the formulas and calculations defined in the Agreement (hereinafter such services shall be collectively referred to as the "Additional Services"). Customer shall pay SYSTRAN the cost for added value for such Additional Services (hereinafter referred to as the "Value Fee (s)"). The Values Fee(s) will be reflected on Customer's daily settlement statement.

3.4 PAYMENT OF ATTORNEYS' FEES. As a condition of Systran agreeing to enter into this Post-Petition Factoring Agreement, Customer has agreed to pay, and shall pay, Systran's reasonable attorneys' fees incurred in the preparation of this and related documents and otherwise incurred in the Bankruptcy Case. Such attorneys' fees are an additional part of the fees charged, and payment of them shall be secured by the post-petition lien granted hereunder and shall be part of Systran's administrative expense allowed hereunder. Systran may choose to collect these attorneys' fees either from payments due Customer or may bill Customer periodically.

4. DEPOSIT

4.1 In order to secure Customer's Obligations hereunder, Customer shall deliver to SYSTRAN a deposit equal to fifteen percent (15%) of Customer's Bills that are ninety (90) days old or less computed from date of purchase ("Deposit").

4.2 ADJUSTMENT OF DEPOSIT. The amount of Customer's Deposit will be reviewed and, if necessary, adjusted each day. Increases in the amount of Customer's Deposit will be withheld by SYSTRAN from payments to Customer. If sufficient Bills are not purchased to fund the increase, Customer will pay the amount of the increase upon demand. Decreases will be repaid to Customer from Customer's Deposit amount.

4.3 REPAYMENT OF DEPOSIT. Upon termination of the Agreement, (a) SYSTRAN may increase the Deposit percentage to 100%, in its sole discretion, and (b) all other sums that may become due to Customer by SYSTRAN will be included in the Deposit. Any shortfall in the Deposit shall bear interest at the rate of four percent (4%) per month.

4.4 ADMINISTRATIVE EXPENSE. Systran shall receive a superpriority administrative expense under 11 U.S.C. § 364(c) in the Customer's bankruptcy estate for all sums owed by the Customer to Systran arising hereunder, including without limitation Systran's reasonable attorneys' fees as described in Section 3.4 above. The Customer shall not seek or permit the award of any other administrative expense under 11 U.S.C. §§ 330, 331, 503(b), 506(c) or 507(a), or any other applicable law, having priority over the claim or right of Systran to an administrative expense hereunder in the Bankruptcy Case.

5. SECURITY INTEREST

5.1 The purchase of The Bill(s) of Customer by SYSTRAN is absolute, subject to the right to Chargeback. In no event shall the purchase of Bills hereunder be construed as a loan. In addition to the outright ownership of The Bill(s) purchased by SYSTRAN, to secure the payment and performance of Customer's Obligations to SYSTRAN, Customer grants SYSTRAN a security interest in, and lien on, any and all now owned or hereafter acquired or created assets of Customer, including without limitation all Customer's present and future Bill(s) and Special Purchase Bill(s), accounts, inventory, deposit accounts, chattel paper, contract rights, insurance contracts and proceeds, general intangibles, choses in action, equipment, instruments, real estate and fixtures, and documents, and the proceeds of the foregoing, including proceeds in the form of inventory and/or equipment, whether tangible or intangible, wherever located together with any and all cash and non-cash proceeds and products and accessions of the forgoing (the "Collateral"). Such security interest is granted pursuant to 11 U.S.C. § 364(c)(2), and Customer shall not grant or permit to be granted any senior lien in said collateral senior in dignity to Systran's security interest granted hereunder.

5.2 FINANCING STATEMENTS. Customer shall not execute or file any financing statement, supplements or amendments thereto, or any other instruments or security agreement covering the Collateral described above in favor of anyone other than SYSTRAN. Customer shall execute and deliver to SYSTRAN any financing statements, title documents, supplements hereunder or the priority of such security interest. CUSTOMER AUTHORIZES SYSTRAN TO SIGN ITS NAME TO ANY SUCH FINANCING STATEMENT AND FILE SAME IN CUSTOMER'S NAME COVERING THE COLLATERAL. Customer shall pay all costs of filing such statements or instruments with appropriate governmental authorities together with the costs of all lien searches. Customer agrees that either a carbon, photocopy, or other reproduction of this Agreement is sufficient as a financing statement under this Agreement.

5.3 SYSTRAN may, in its sole discretion, elect to discharge any security interest, lien or other encumbrance upon any of The Bill(s) for services rendered or goods sold purchased by SYSTRAN. Any such payments and all expenses incurred in connection therewith shall be treated as a Chargeback. Notwithstanding the foregoing, SYSTRAN shall have no obligation to discharge any such security interest, lien or encumbrance.

6. RECOURSE, DISPUTES AND CHARGEBACKS

6.1 All of The Bill(s) are purchased by SYSTRAN from Customer with Recourse. All of The Bill(s) may be Chargedback to Customer at any time after ninety (90) days for a Commercial Account and steamship companies, and ninety (90) days for Transportation Account(s) after the purchase date of The Bill(s) if not collected from Debtor within such period or at any time, if SYSTRAN determines, in its sole discretion, that The Bill(s) is not collectible. All of The Bill(s) owing by Canadian Debtors or logistics companies are subject to Chargeback sixty (60) days from the date of purchase by SYSTRAN. All Special Purchase Bills are subject to Chargeback sixty (60) days from the date of purchase by SYSTRAN. SYSTRAN shall not deem a disputed Bill or Special Purchase Bill uncollectable without allowing Customer a reasonable time to settle the dispute not to exceed fourteen (14) days from notice of dispute. It is within SYSTRAN's discretion as to when The Bill(s) over such time periods may be Chargedback to Customer.

6.2 SYSTRAN reserves the right, however, from time to time and at its absolute discretion, to Chargeback to Customer any of The Bill(s) which do not conform to the representations and warranties set forth in the Agreement or are discovered not to conform with the reasonable standards which SYSTRAN may set for The Bill(s). SYSTRAN shall have a continuing security interest in any and all of The Bill(s) which are Chargedback to the Customer. Chargeback of any of The Bill(s) does not authorize Customer to collect any outstanding sum owing on The Bill(s) from a Debtor.

6.3 COLLECTION OF BILLS. SYSTRAN may, but is not required to, commence any action, including legal action, to collect The Bill(s). All costs of collection, including attorney fees, court fees, and costs of investigation, will be charged to the Customer. Prior to any event of default by a Debtor, SYSTRAN will commence litigation only with Customer's authorization. Subsequent to an event of default, SYSTRAN may file suit as it deems necessary without Customer's authorization. In the event of default, Customer hereby grants authorization to SYSTRAN to settle or compromise any freight bill dispute, including litigation, with any uncollected amount being subject to Chargeback, together with all other amounts for which Customer is obligated to SYSTRAN.

6.4 CLEARANCE DAYS. Clearance Days shall mean (i) three (3) business days for checks drawn on banks located within the United States and for all electronic funds transfers, and (ii) three (3) business days for all other payments. For all purposes and computations under this Agreement, Clearance Days will be added to the date on which any payment is received by SYSTRAN.

7. WARRANTIES AND REPRESENTATIONS

7.1 Customer warrants and represents with respect to all of The Bill(s) sold to SYSTRAN that (a) The Bill(s) are genuine and in all respects what they purport to be; (b) Customer has good title to The Bill(s) and The Bill(s) are free and clear of all encumbrances, liens and prior claims, and that the Customer has the legal right to sell The Bill(s); (c) Customer has no knowledge of any fact which may impair the validity of The Bill(s) or make them uncollectible in accordance with its terms and face amount; (d) for transportation Customers, The Bill(s) were made in accordance with the laws and the regulations of the Federal Highway Administration or other federal regulatory agency, and the appropriate state regulatory commission or made according to lawful and valid contracts which Customer has executed; (e) for transportation Customers, The Bill(s) are supported by lawful, effective and complete bills of lading or other contract of carriage together with bona fide, genuine, valid and signed delivery receipts, and Customer will not modify or delete any of the terms of the original Bills or Special Purchase Bills or bill of lading with respect to same; (f) there are no counterclaims or setoffs or defenses existing in favor of the Debtor, whether arising from the services provided or goods sold which are the subject of The Bill(s) or otherwise and there has been no agreement as to the issuance or granting of any discount on The Bill(s); (g) The Bill(s) are not a duplicate of and do not cover the same services provided or goods sold as a Bill or Special Purchase Bill previously purchased by SYSTRAN from the Customer or billed directly by the Customer to the Debtor; (h) Customer does not own, control, or exercise dominion over the business of any Debtor whose Bills or Special Purchase Bills are factored by Customer to SYSTRAN. Customer is not a subsidiary of any Debtor and no Debtors control or exercise dominion over the business of Customer; (i) Customer will not under any circumstances or in any manner whatsoever interfere with any of SYSTRAN's rights under this Agreement in connection with SYSTRAN's factoring of The Bill(s); (j) Customer has not and will not pledge the credit of SYSTRAN to any person or business for any purpose whatsoever; (k) for non-transportation Customers, until the sale by Customer to Debtor of the goods described in The Bill(s), Customer had good title to the goods sold, the goods were free of all encumbrances, liens and prior claims, and Customer had the legal right to sell the goods.

7.2 If the Customer is a corporation, partnership or limited liability company, it is duly organized, existing, and in good standing under the laws of Illinois. If Customer represents him or herself to be a sole proprietorship or a partnership, such representation shall be deemed conclusive and binding upon Customer. Customer is duly qualified to do business and is in good standing in every other state in which such qualification is required. If Customer is a corporation, partnership or limited liability company, execution, delivery and performance hereof are within its corporate or entity powers, have been duly authorized, and are not in contradiction of law or the terms of its charter, by-laws, partnership agreement, operating agreement or other entity papers, or any indenture, agreement or undertaking to which it is a party or by which it is bound, except that Customer may not enter into this Post-Petition Factoring Agreement absent the approval of the Bankruptcy Court. In addition, the Customer has all licenses and certificates necessary for the operation of its business and the issuance of The Bill(s).

8. AUTHORITY

Customer irrevocably authorizes SYSTRAN or any person designated by SYSTRAN to: bill, receive and collect all amounts which may be due or become due to Customer from Debtors and to use Customer's name for purposes of billing and collection of amounts due; delete Customer's address on all invoices mailed to Debtor and substitute SYSTRAN's address; receive, open and dispose of all mail addressed to Customer or Customer's trade name at SYSTRAN's address; negotiate checks received in payment whether payable to Customer or to SYSTRAN, endorse the name of Customer or Customer's trade name on any checks or other evidences of payment that may come into the possession of SYSTRAN on The Bill(s) purchased by SYSTRAN and on any invoices or other document relating to any of The Bill(s); in Customer's name, or otherwise, demand, sue for, collect and get or give releases for any and all monies due or to become due on The Bill(s); compromise, prosecute, or defend any action, claim or proceeding as to The Bill(s) purchased by SYSTRAN; take all steps necessary to ensure payment of such amounts due and do any and all things in Customer's name necessary and proper to carry out the purpose intended by this Agreement.

9. ADDITIONAL DOCUMENTS

The Customer shall execute and deliver all such additional and further instruments as may be reasonably requested by SYSTRAN in order to more completely vest in and assure to SYSTRAN and make available to it, the property and rights herewith or hereafter granted or assigned and transferred to SYSTRAN as Collateral and to evidence the sale of The Bill(s) to SYSTRAN and to carry into effect the provisions and intent of this Agreement.

10. LOCATION OF BOOKS AND RECORDS, PLACE OF BUSINESS

Customer's place of business is the one set forth in this Agreement and all of its books, accounts, correspondence, papers and records pertaining to the services performed or sales of products are located there, and all such books, accounts, correspondence, papers and records will be opened for SYSTRAN's inspection at all reasonable times.

11. INDEMNIFICATION OF SYSTRAN; SALES AND EXCISE TAXES

Customer will indemnify and hold SYSTRAN harmless against any and all liability, loss or expense, including attorney's fees and costs, caused by or arising out of any claims or alleged claims asserted relating in any manner to The Bill(s) purchased by SYSTRAN hereunder or subject to SYSTRAN's security interest, including, but not limited to, claims asserted against SYSTRAN pursuant to Chapter 5, Title 11 of the *United States Code*. In the event any sales or excise taxes are imposed by any state, federal or local authorities with respect to any of The Bill(s) sold and assigned hereunder, where such taxes are required to be withheld or paid by SYSTRAN, Customer shall also indemnify SYSTRAN and hold it harmless with respect to all such taxes and hereby authorizes SYSTRAN to charge to Customer's account any such tax that is paid or withheld by SYSTRAN. SYSTRAN may charge the Deposit or initiate legal proceedings to collect any amount due under this paragraph. This paragraph shall survive and remain effective following the termination of the Factoring Agreement.

12. FINANCIAL INFORMATION

So long as Customer factors or has any absolute or contingent obligation of any kind owing to SYSTRAN, the Customer will provide information regarding the business, affairs and financial condition of Customer and its subsidiaries as SYSTRAN may reasonably request, including financial statements.

13. BANKRUPTCY

Customer agrees to notify SYSTRAN of any voluntary or involuntary bankruptcy petition filed by or against it or any guarantor within twenty-four (24) hours of such filing.

14. REORGANIZATION, ACQUISITIONS, CHANGE OF NAME OR LOCATION

Customer will not, and will not permit any subsidiary to merge or consolidate with or into any corporation or other entity, or sell, lease, transfer, or otherwise dispose of all or any substantial part of its assets, whether now owned or hereafter acquired. Customer shall notify SYSTRAN in writing not less than thirty (30) days prior to (a) any change of its name or use of any trade names; or (b) any change in the address of the chief executive office and/or chief place of business of Customer or the location of any records pertaining to The Bill(s).

15. LITIGATION

Except as disclosed in writing, Customer represents and warrants to SYSTRAN as follows: There are no suits or proceedings pending or to the knowledge of Customer, threatened against or affecting Customer or any of its subsidiaries which, if adversely determined, would have a material adverse effect on the financial condition or business of Customer and its subsidiaries and there are no proceedings by or before any governmental commission, board, bureau, or other administrative agency pending or, to the knowledge of Customer, threatened, against Customer or any of its subsidiaries. Further, Customer represents and warrants there is no claim, loss contingency, or proceeding, whether or not pending, threatened or imminent, against or otherwise affecting Customer that involves the possibility of any judgment or liability not fully covered by insurance or that may result in a material adverse change in the business, properties, or condition, financial or otherwise, of Customer. The parties, however, acknowledge that Customer is the debtor in the Bankruptcy Case.

16. TRADE NAMES

Customer represents and warrants to SYSTRAN that it utilizes no trade names or assumed business names in the conduct of its business except Remare Transportation Corporation and/or Remare Transportation Corporation dba MGM Company and/or dba MGM and/or dba MGM Transportation Services and/or dba MGM Company of Illinois.

17. TAXES; BANKRUPTCY REPORTS

Customer represents and warrants to SYSTRAN that: (a) Customer has filed all federal, state, and local tax returns and other reports it is required to file, (b) has paid or made adequate provision for payment of all such taxes, assessments, and other governmental charges, and (c) has filed an will file all reports and other papers required to be filed in the Bankruptcy Case, and has paid and will pay all fees required to be paid in the Bankruptcy Case.

18. TERM AND TERMINATION

18.1 This Agreement is for a term of thirty-six (36) full months to begin on the Commencement Date as defined in paragraph 1(c) herein. The term of this Agreement shall renew automatically for consecutive twelve (12) month terms unless sooner terminated in accordance with the terms of the Agreement. Customer may terminate this Agreement effective at the end of any term by giving thirty (30) days prior written notice to SYSTRAN at the address set forth in this Agreement. Customer may continue to offer any of The Bill(s) to SYSTRAN during such thirty (30) day period. SYSTRAN may terminate this Agreement at any time and for any reason by notifying Customer in writing of such termination.

18.2 All of Customer's representations, warranties, and other provisions of this Agreement shall survive such termination until SYSTRAN has been paid in full and Customer has fully performed all of its obligations. In addition, should any transfer of money or property to SYSTRAN hereunder be avoided in a bankruptcy proceeding involving Customer, any Debtor of Customer, or otherwise, then Customer's Obligations hereunder shall be reinstated and/or supplemented to the extent of the avoided transfer, whether or not this Agreement has otherwise been terminated.

18.3 Notwithstanding the foregoing, Customer has the option to terminate this Agreement prior to the end of any term by giving SYSTRAN thirty (30) days prior written notice. Customer may continue to offer any of The Bill(s) to SYSTRAN during such thirty (30) day period. Customer shall be deemed to have terminated this Agreement prior to the end of any term on the date that Customer shall have ceased presenting The Bill(s) to SYSTRAN in the normal course for an uninterrupted period of thirty (30) days ("Deemed Termination"). Upon notice of early termination, or the date of a Deemed Termination by Customer, prior to the end of any term, whether or not Customer continues to offer The Bill(s) to SYSTRAN during the thirty (30) day notice period applicable to Customer, Customer shall be obligated to pay to SYSTRAN, and Customer's Deposit may be charged, an early termination premium ("Early Termination Premium") in an amount as noted in the Addendum, or the then current Service Fee specified in Section 3.1 or any subsequent amendment to Section 3.1, whichever fee is greater, times the dollar volume of The Bill(s) purchased by SYSTRAN during the month in which Customer's dollar volume of The Bill(s) purchased by SYSTRAN was the greatest multiplied by the number of months remaining in the then current term, or eleven (11) months, whichever is lower.

18.4 Any partial month remaining in the current term shall constitute a full month for the purpose of calculating the Early Termination Premium. In addition, if SYSTRAN buys Bills from Customer as part of a Special Purchase Bill, and should Customer terminate this Agreement within the first four (4) months of the term of this Agreement, Customer's Deposit shall be charged an Early Termination Premium in the amount of the balance of the Deposit on the termination date. The termination date shall be thirty (30) days after SYSTRAN's receipt of the termination notice or on the Deemed Termination date, unless a termination notice specifies a date that is more than thirty (30) days but less than sixty (60) days after SYSTRAN's receipt of the termination notice.

18.5 If SYSTRAN terminates this Agreement prior to the end of any term upon any default in the performance of Customer under this Agreement, in view of the impracticality and extreme difficulty in ascertaining actual damages and by mutual agreement of the parties as to the reasonable calculation of SYSTRAN's lost profits as a result thereof, Customer shall be obligated to pay SYSTRAN upon the effective date of such termination, and Customer's Deposit may be charged, a premium in an amount equal to the Early Termination Premium as set forth above. If Customer terminates this Agreement pursuant to the terms thereof, Customer shall immediately remit and pay to SYSTRAN, at the time of termination, all Obligations due and owing to SYSTRAN and/or its affiliates by Customer, under this and any other Agreement.

19. EVENTS OF DEFAULT

19.1 The following shall be events of default under the terms of this Agreement: (a) default by Customer in the performance of any Obligation to SYSTRAN or any other financial institution or bank; (b) Customer agrees to the appointment of a receiver for its assets, makes general assignment for the benefit of creditors or declares that it is unable to pay its debts as they mature; (c) any representation or warranty made by Customer to Systran is found to be false or misleading; (d) the Bankruptcy Case is dismissed or converted to a Chapter 7 liquidation, or a Trustee is appointed in the Bankruptcy Case; (e) any involuntary petition under the *Bankruptcy Code* or similar statute has been filed against the Customer and not dismissed within sixty (60) days after filing without the entry of an order for relief; (f) the issuance of an attachment, execution, tax assessment or similar process against the

Customer or its property which is not released within ten (10) days of its attachment; (g) any change in the conditions, financial or otherwise, of the Customer which reasonably causes SYSTRAN to deem itself insecure.

19.2 In addition to all other remedies provided by law, upon the occurrence of an event of default, SYSTRAN may immediately, and without notice to the Customer, (i) terminate this agreement, and (ii) increase the amount of the Deposit required under Section 4 of this Agreement to one hundred percent (100%) of the outstanding amount of Bills purchased from the Customer ("100% Deposit"), and the Customer shall immediately deliver to SYSTRAN funds sufficient to create this 100% Deposit.

19.3 SYSTRAN may, upon default under the Agreement or any of the agreements, collect any Obligation owing to SYSTRAN or any of its affiliates by debiting Customer's account, attach any funds owing to Customer by SYSTRAN or its affiliates, and exercise any other remedy available to SYSTRAN under the Agreements or at law. Any deficiency arising under this Agreement shall accrue interest at the annual rate of twelve percent (12%) or the highest amount allowed by law, whichever is higher, from the date the deficiency is incurred.

19.4 In addition to the above, in the event of a default hereunder, and in addition to all other remedies available in law or equity, Systran may declare all amounts owed hereunder to be due and payable immediately, and it may commence a lawsuit in a court of competent jurisdiction for the purpose of collecting such sums. Systran also may, in its discretion and without waiving any other remedy it may have, immediately set off against the sums it is owed all amounts held in the Deposit, without the necessity of obtaining a stay relief or other order from the Bankruptcy Court.

20. EXPENSES

20.1 Customer shall reimburse SYSTRAN for all fees, costs and expenses incurred by SYSTRAN in relation to this Agreement. SYSTRAN may, at any time, and without regard to any remedy listed above, demand from Customer payment of the outstanding fees, costs and expenses.

20.2 ATTORNEYS' FEES. With respect to any default under this Agreement, Customer shall reimburse SYSTRAN for all costs and expenses incurred by attorneys, including both SYSTRAN's in-house attorneys and outside attorneys' and paralegals' whether or not a lawsuit or other court action is actually filed in connection with the event of default. In the event that a suit, action, arbitration, or other proceeding of any nature, including, without limitation, any proceeding under *The Bankruptcy Code*, any action seeking a declaration of rights or an action for rescission is instituted to interpret or enforce this Agreement, including, but not limited to such fees and costs associated with trial and appeals, Customer agrees to pay the reasonable attorneys' fees incurred in connection with any such proceeding as awarded by the court.

20.3 OTHER PROFESSIONALS AND EXPERTS. With respect to any event of default under this Agreement, SYSTRAN in its sole discretion may retain accountants, auditors, appraisers and other experts and the Customer agrees to pay the professional fees, expert fees and all other fees and costs reasonably and actually incurred in connection with the services provided.

20.4 NO LIEN TERMINATION WITHOUT RELEASE. In recognition of SYSTRAN's right to have its attorneys' fees and other expenses incurred in connection with this Agreement secured by the Collateral, notwithstanding payment in full of all Obligations by Customer, SYSTRAN shall not be required to record any terminations or satisfactions of any of SYSTRAN's liens on the Collateral unless and until Customer has executed and delivered to SYSTRAN a general release in a form reasonably satisfactory to SYSTRAN. **Customer understands that this provision constitutes a waiver of its rights under 9-513 of the UCC.**

**20.5 JURY TRIAL WAIVER. IN RECOGNITION OF THE HIGHER COSTS AND DELAY WHICH MAY RESULT FROM A JURY TRIAL, THE PARTIES WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING HEREUNDER, OR (B) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT HERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND EACH PARTY FURTHER WAIVES ANY RIGHT TO CONSOLIDATE ANY SUCH ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED; AND EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY HERETO MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.**

21. JURISDICTION AND VENUE

This Agreement shall be deemed to be a contract under the laws of the State of Oregon and for all purposes shall be governed by and construed in accordance with the laws of that state. Customer irrevocably agrees that any legal action or proceeding brought by or against Customer with respect to the Agreement shall be brought in the courts of the State of Oregon or in the U.S. District Court for the District of Oregon. Customer consents to the jurisdiction of such courts and that the venue for any such action shall be the County of Clackamas. This provision shall not limit the right of SYSTRAN to bring such actions or proceedings against Customer in the court of such other states or jurisdictions where Customer may be subject to jurisdiction. Customer expressly authorizes service of process in any such suit or action on its behalf upon Registered Agent: William J. Strons, at (address) 1755 S. Naperville Rd. St.e 200, Wheaton, IL 60187 or upon such other agent as SYSTRAN may approve in writing, as its agent for such purposes and that service may be deemed complete upon delivery via expedited national overnight delivery service. Responses to any such lawsuit by Customer must be filed and served within twenty (20) days after receipt of service of process. As used herein, process shall be deemed received upon the earlier of (i) actual receipt of process, as evidenced by an executed certified mail return, and (ii) ten (10) days after the date on which process is mailed by Systran. This section shall remain effective upon the resignation of Registered Agent, or upon the Registered Agent's change of address, except the address to which process can be mailed shall be changed if Systran is informed in writing, prior to the mailing of any process, of a new Registered Agent or address to which process should be mailed.

22. WAIVER, NOTICE

The waiver by SYSTRAN of the breach of any term of this Agreement or of the compliance therewith shall not be construed as a waiver of any other breach or compliance. Notices from either party to the other shall be given in writing and mailed postage prepaid, registered or certified mail, or placed in the hands of a national overnight delivery service, addressed to the addresses set forth opposite each party's name below, or at such other address as either party may hereafter advise the other in writing.

23. ASSIGNMENT

Customer may not assign any of its rights or obligations hereunder. SYSTRAN may assign or grant a security interest in this Agreement or in any of The Bill(s) purchased by SYSTRAN. SYSTRAN may assign any of its rights and remedies with respect to The Bill(s) including the right to notify Debtors to make payment to SYSTRAN's assignee.

24. SEVERABILITY

The provisions of this Agreement are severable and if any of these provisions shall be held by any court of competent jurisdiction to be unenforceable such holding shall not affect or impair any other provisions hereof.

25. **COMPLETE UNDERSTANDING**
This Agreement comprises the complete understanding among the parties and may only be varied by a writing executed by the parties hereto. Paragraph headings are for convenience only.

26. **THIRD PARTY CONSULTATION**
Customer hereby agrees and acknowledges that it has had the opportunity to seek out and consult with legal counsel and/or independent business advisors of its own choosing in connection with the negotiation, execution and delivery of this Agreement. This Agreement shall be construed without regard to any presumption or rule requiring that it be construed against the party causing this Agreement, or any part hereof to be drafted.

27. **NO OFFER/COMMITMENT**
The presentation of this Agreement to Customer does not constitute either an offer or commitment to purchase The Bill(s) or to extend credit to Customer.

28. **CREDIT INFORMATION**
Customer authorizes SYSTRAN or any of its affiliates to obtain credit bureau reports, and make other credit inquiries that it determines are necessary. On Customer's written request, SYSTRAN will inform Customer whether SYSTRAN has requested a consumer credit report and the name and address of any consumer credit reporting agency that published a report. Customer acknowledges that without further notice SYSTRAN may use or request additional credit bureau reports to update its information so long as Customer obligations to SYSTRAN are outstanding.

29. **GUARANTORS**
The parties acknowledge that Randy C. Schwoeble, John T. Williams, Jr., Charles T. Gensar, NBCCAT Corporation and RTC Acquisitions Company, LLC have executed Continuing Guaranties or Collateralized Guaranties of the obligations of Customer arising hereunder, and that Systran would not enter into this Post Petition Factoring Agreement without said personal guaranties.

SYSTRAN FINANCIAL SERVICES CORPORATION

By: ______________________________

Title: ______________________________

Date: ______________________________

Address: 4949 SW Meadows Drive
Suite 500
Lake Oswego, Oregon 97035

Remaro Transportation Corporation

By: ______________________________

Title: ______________________________

Date: ______________________________

Address: 1600 W. 43rd St.

Chicago, IL 60609

Witness:

By: ______________________________

Print Name: ______________________________

Address: ______________________________

______________________________

Phone: ______________________________

Witness:

By: ______________________________

Print Name: ______________________________

Address: ______________________________

______________________________

Phone: ______________________________

**EXHIBIT "A"**
**TO FACTORING AGREEMENT DATED ________, 2005**

The terms used in this Exhibit A have the same definitions as those used in the Factoring Agreement. In case of conflict of definition, the definitions in this Exhibit "A" shall prevail.

Customer shall pay a fee at an annual rate equal to prime plus four percent (4%) of all funds employed to purchase Bills ("Prime Plus Fee"). Prime is defined as the prime rate as announced by Wells Fargo Bank, N.A. Funds employed shall be calculated by SYSTRAN on a daily basis based upon bills unpaid and outstanding, less the deposit. The above Prime Plus Fee may be deducted from Customer's funding for Bills purchased pursuant to the Factoring Agreement or Systran may bill Customer. A change in the Prime Plus Fee due to a prime rate change will be effective upon the date of the change, which will be indicated on the settlement statement.

Customer shall pay a closing fee (the "Closing Fee") in the amount of $18,750.00, to be deducted from funds due Customer on the first day of funding to Customer by SYSTRAN. Customer shall also pay an annual line fee of one and five tenths percent (1.5%) of the Maximum Approved Credit Line (the "Annual Line Fee"). The Annual Line Fee shall be deducted from Customer's funding on the anniversary date of the first funding date, annually.

In addition to the Service Fees and pursuant to sections 3.1 and 3.2, SYSTRAN shall charge and Customer shall pay a monthly collateral monitoring fee of $2,000.00 per month (the "Collateral Monitoring Fee") to be deducted from Customer's funding on the first funding date, and thereafter on the first day of each calendar month.

A managed account shall also be created for all Bills that Systran is unable to purchase and all Bills which Customer does not want to factor (the "Managed Account"). Customer shall pay one-tenth of one percent (.10%) of the face amount of all Managed Account Bills ("Managed Account Fee"). The deposit on the Managed Account is 100%.

______
Initial

# ADDENDUM TO THE FACTORING AGREEMENT DATED______, 2005

This Addendum is to the Factoring Agreement (the "Agreement"), dated ________________, 2005 between Systran Financial Services Corporation ("SYSTRAN") and Remare Transportation Corporation (the "Customer").

- **Section 2, entitled, "Purchase of Bills", paragraph 2.4 of the Agreement to include the following:**
  Customer may mail all Bills directly to account debtors. All Bills so directly mailed by Customer must be stamped with SYSTRAN's notice of assignment attached as noted below. Customer will provide copies of all Bills, together with signed copies of the respective proof of delivery prior to SYSTRAN considering them for purchase. Nothing in the Addendum shall obligate SYSTRAN to purchase any Bill owing by the account debtors, listed above. Customer must obtain SYSTRAN's consent prior to adding any account debtors to the list of direct mailed parties.

Remit Only To:
Systran Financial Services Corp.
PO Box 890928
Dallas, TX 75389-0928
This account is sold, assigned and payable to SYSTRAN.

- **Section 4.1 of the Agreement shall be modified as follows:**
  In order to secure Customer's Obligations hereunder, Customer shall deliver to SYSTRAN a deposit equal to eighteen percent (18%) of Customer' Bills that are ninety (90) days old or less computed from date of purchase ("Deposit").

- **Paragraph 12 of the Factoring Agreement shall be amended to include the following:**
  Customer shall deliver to SYSTRAN, within ninety (90) days following the close of each of its fiscal years, Customer's audited financial statements, certified by a recognized firm of certified public accounts acceptable to SYSTRAN as having been prepared in accordance with generally accepted accounting principles and as presenting fairly the financial condition of Customer as of the date thereof and for the period then ended (and including a management letter to Customer from such accounts). Customer shall also deliver to SYSTRAN monthly accounts payables listings and monthly internal financial statements within thirty (30) days following the close of each of the calendar months or calendar.

  One or more employees or agents of SYSTRAN may perform field examinations of the books, records and other assets of Customer. SYSTRAN shall perform such field examinations each quarter (4 times each year), unless Customer shall default under the terms of the Factoring Agreement. Customer shall pay to SYSTRAN a field examination fee (the "Field Examination Fee") in an amount equal to $750 for each day spent by each such employee or agent in performing and/or summarizing the results of such examination (including all necessary travel time) plus all "out of pocket" expenses. Each Field Examination Fee shall be payable by Customer to SYSTRAN, in whole or in part, as appropriate, on the date(s) on which such field examination was performed.

- **Paragraph 18.3 of the Factoring Agreement shall be amended in the following particulars only:**
  Notwithstanding the foregoing, Customer has the option to terminate this Agreement prior to the end of any term by giving SYSTRAN thirty (30) days prior written notice. Customer may continue to offer any of The Bill(s) to SYSTRAN during such thirty (30) day period. Customer shall be deemed to have terminated this Agreement prior to the end of any term on the date that Customer shall have ceased presenting The Bill(s) to SYSTRAN in the normal course for an uninterrupted period of thirty (30) days ("Deemed Termination"). Upon notice of early termination, or the date of a Deemed Termination by Customer, prior to the end of any term, whether or not Customer continues to offer The Bill(s) to SYSTRAN during the thirty (30) day notice period applicable to Customer, Customer shall be obligated to pay to SYSTRAN, and Customer's Deposit may be charged, an early termination premium ("Early Termination Premium") equal to three percent (3%) of the Maximum Approved Credit Line if made prior to the first anniversary of this Agreement, two percent (2%) of the Maximum Approved Credit Line if made prior to the second anniversary of this Agreement and one percent (1%) of the Maximum Approved Credit Line if an early termination occurs at any point thereafter and prior to the end of the then current term.

The parties agree that the terms of this Addendum shall be incorporated in terms of the Agreement. All defined terms in the Addendum shall have the same meaning as the defined terms in the Agreement.

______________
Initial

Ramara Transportation Corp
Cash Collateral Budget as of May 10, 2005

| | Weeks Ending | | | | | Weeks Ending | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 05/13/05 | 5/20/2005 | 5/27/2005 | 6/3/2005 | 06/10/05 | 06/17/05 | 06/24/05 | 07/01/05 | 07/08/05 | 07/15/05 |
| **Cash Receipts:** | | | | | | | | | | |
| From System** | 200,000 | 200,000 | 200,000 | 175,000 | $185,000 | $185,000 | $185,000 | $185,000 | $185,000 | $185,000 |
| Cash sales | 8,000 | 8,300 | 8,300 | 8,000 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 |
| **Total Cash Receipts** | 208,000 | 208,000 | 208,000 | 183,000 | $192,500 | $192,500 | $192,500 | $192,500 | $192,500 | $192,500 |
| **Cash Outflows:** | | | | | | | | | | |
| Payroll | 72,000 | 72,000 | 72,000 | 72,000 | $72,000 | $70,000 | $70,000 | $70,000 | $75,000 | $70,000 |
| Parts Purchases | 25,000 | 25,000 | 25,000 | 25,000 | $22,500 | $22,500 | $22,500 | $22,500 | $22,500 | $22,500 |
| Subcontract Labor | | | | | | | | | | |
| Fuel-Customer | 25,000 | 25,000 | 25,000 | 25,000 | $26,000 | $26,000 | $26,000 | $26,000 | $26,000 | $28,000 |
| Equip Leases | | 8,350 | | | | $8,350 | | | | 4,350 |
| Equip Repairs | 2,200 | 2,200 | 2,200 | 2,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 |
| Fuel | 4,500 | 4,500 | 4,500 | 4,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 |
| Worker Comp Ins | | 33,450 | | | $33,450 | | | | $33,450 | |
| Officer Life Insurance | | | 9,000 | | | | $4,100 | | | |
| Liability Ins | | | 16,000 | | | | $16,000 | | | |
| Benefits-Union | 57,404 | | 3,606 | | $25,008 | $32,000 | $3,300 | | | 43,300 |
| Benefits-Non Union | | 1,000 | 2,000 | 23,000 | | $1,000 | $2,000 | $23,800 | | |
| Shop Supplies | 1,500 | 1,500 | 1,500 | 1,500 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 |
| Uniforms | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 |
| Legal | | | 10,000 | | | | | | | |
| Accounting | | | 1,200 | 1,200 | | | $1,200 | $1,200 | | |
| Access Fees | | 1,300 | | | | $1,000 | | | | |
| Scavenger | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| Office Supplies | | | 1,800 | | | $650 | | | | |
| Phones | | 4,500 | | | | | | $4,500 | | |
| Utilities-Gas and Electric | 4,500 | | 4,500 | | $4,500 | | $4,500 | | 4500 | |
| Rents-RTC | | 14,000 | | | | | $14,000 | | | |
| Rents-Landlords | | | | | | | | | | |
| Property Taxes | | | | | | | | | | |
| Security | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| Postage | | | 1,200 | | | $1,200 | | | | 1200 |
| Travel | 500 | | 500 | | $500 | | $500 | | 500 | |
| Sales Taxes | | 9,600 | | | | | | $9,000 | | |
| IRS Payment | | | 5,000 | | | | | $5,000 | | 5000 |
| **Total Cash Outflows** | 192,054 | 203,550 | 188,353 | 157,850 | 194,100 | 170,850 | 178,250 | 171,350 | 167,100 | 184,200 |
| **Net Change In Cash** | 15,946 | 4,450 | 19,650 | 25,150 | -1,600 | 21,650 | 14,250 | 21,150 | 25,400 | 8,300 |
| **Beginning Cash Balance** | 0 | 15,946 | 20,396 | 43,046 | 65,196 | 63,596 | 85,246 | 99,496 | 120,646 | 146,046 |
| **Ending Cash Balance** | 15,946 | 20,396 | 43,046 | 65,196 | 63,596 | 85,246 | 99,496 | 120,646 | 146,046 | 154,346 |

Note: Payroll is Gross Payroll plus Employer Payroll Tax Expense.

**Note: The funding from System is discretionary as provided in the Factoring Agreement. Nothing in the budget should be deemed or construed to be a firm commitment that System will be funding such amounts.

## SYSTRAN FINANCIAL SERVICES CORPORATION POST-PETITION FACTORING AGREEMENT

This Post-Petition Factoring Agreement dated ________________, 2005 (the "Agreement"), is between SYSTRAN Financial Services Corporation, a subsidiary of Textron Financial Corporation ("SYSTRAN") and its successor or assigns and NBCCAT Corporation (the "Customer"), whose address is set forth on the last page hereof.

**WHEREAS**, Customer is engaged in the business of transportation; and

**WHEREAS**, Customer filed a voluntary petition under Chapter 11 of the Bankruptcy Code on May 10, 2005, case no. 05 B 18546, pending in the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Case"), and is presently operating its business as a debtor-in-possession; and

**WHEREAS**, prior to the commencement of the Bankruptcy Case, Customer and SYSTRAN were parties to a Factoring Agreement dated December 13, 2002; and

**WHEREAS**, Customer has requested that Systran enter into this Post-Petition Factoring Agreement, and Systran has agreed, subject to the approval of the Court in which the Bankruptcy Case is pending (the "Bankruptcy Court");

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the parties agree as follows:

**1. DEFINITIONS**

(a) "Bill(s)" means any right to payment for services rendered or goods sold by Customer to a Debtor evidenced by a writing which complies with the general requirements of SYSTRAN as those may be set forth in the Customer Information Manual, as described in Paragraph 2.5.

(b) "Chargeback" the debit of a Bill or a "Special Purchase Bill(s)" to a Customer's account.

(c) "Commencement Date" means the date that the Customer first receives funds from SYSTRAN pursuant to the terms of the Agreement.

(d) "Commercial Account" means any non "Transportation Account".

(e) "Debtor" means a person or entity obligated to pay a Bill.

(f) "Maximum Approved Credit Line" means the amount of credit that is approved for Customer by SYSTRAN inclusive of deposit and advances against purchases of Bills that Customer's total account is not to exceed.

(g) "Maximum Debtor Credit Limit" means the maximum outstanding dollar amount and/or percentage concentration of Customer's unpaid Bills open with SYSTRAN owing by an individual Debtor and/or its affiliates at any given time under the term of the Agreement.

(h) "Minimum Anticipated Volume" means the dollar amount of Bills funded by SYSTRAN that Customer presents each month during the term of the Factoring Agreement for purchase by SYSTRAN that meet the Maximum Approved Credit Line criteria and Maximum Debtor Credit Limit(s) established from time to time at the sole discretion of Systran in connection with Customer's account.

(i) "Obligation" means all indebtedness, liabilities and obligations whatsoever and of whatever nature owed by Customer to SYSTRAN, or any of its affiliates, whether direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising and how ever evidenced or acquired, whether joint or several or joint and several.

(j) "Recourse" means the right to Chargeback a Bill(s) or "Special Purchase Bill(s)" to Customer.

(k) "Special Purchase Bill(s)" means the purchase by SYSTRAN of Customer's outstanding and unpaid Bills that have either been previously billed by Customer, financed by a lender, or sold and assigned to another company who buys Bills. Special Purchase Bills shall be subject to all provisions of this Agreement.

(l) "Transportation Account" means any Debtor doing business primarily with any aspect of the transportation industry such as freight carriers, brokers, forwarders, consolidators, and rail agents with the exception of steamship companies.

**2. PURCHASE OF BILLS**

2.1 Customer agrees to present on a monthly basis, a Minimum Anticipated Volume of Bills for SYSTRAN to purchase which shall be equal to $1,000,000.00. SYSTRAN, at its sole discretion, may purchase such Bills. Bill(s) and or Special Purchase Bill(s) shall herein collectively be referred to as "The Bill(s)". Such sales shall be absolute and unconditional, subject only to Recourse as described herein. Customer shall submit to SYSTRAN an original and one (1) copy, along with any document which SYSTRAN deems necessary, of each Bill which shall be attached to a schedule form provided by SYSTRAN. Should any Debtor require any additional documentation as a prerequisite to payment, Customer will also provide such documentation with each Bill. For a Transportation Account, Customer shall also submit one (1) copy of the respective bill of lading. The bill of lading must be signed by the Customer, the shipper, and the consignee if the consignee's signature is necessary for payment.

2.2 SYSTRAN will settle with the Customer by providing to Customer by U.S. Mail, electronic mail, or via facsimile a settlement statement setting forth The Bill(s) and/or Special Bills purchased, the amount paid, and any deductions made for fees, charges or the "Deposit" and deposit funds as follows: **[Customer shall choose one option]** ☐ Mail funds due Customer. ☐ Deliver overnight funds due Customer via Federal Express next day service air. ☐ Wire transfer funds due Customer into bank account specified by Customer on wire authorization form. ☐ Deposit funds due Customer. ________ (initials)

2.3 Any payment to Customer may be reduced by SYSTRAN by any amount due from Customer to SYSTRAN, including but not limited to the security deposit, Chargebacks, fees and costs.

2.4 SYSTRAN may give notice to the Debtors of the assignment of The Bill(s) by placing a legend on The Bill(s) stating The Bill(s) have been sold and assigned to SYSTRAN and are payable to SYSTRAN at an address designated by SYSTRAN. Customer will not attempt to direct payment to any place other than to the SYSTRAN designated address. Customer agrees to pay all costs and expenses incurred by SYSTRAN in giving such notice. All proceeds of The Bill(s) received by Customer shall be delivered immediately to SYSTRAN in the identical form of payment received by Customer. In the event that Customer collects directly from the Debtor, The Bill(s) which have been sold to SYSTRAN and Customer does not deliver immediately to SYSTRAN the identical form of payment received by Customer, Customer shall be in default hereunder and will be charged an administrative fee equal to fifteen percent (15%) of the face amount of The Bill(s) collected directly. Customer agrees that any collection directly from the Debtor by Customer of The Bill(s) which have been sold to SYSTRAN will be considered a default under the terms of this Agreement, and that in addition to the administrative fee described herein, Systran will be entitled to pursue its other remedies permitted hereunder and under applicable law.

2.5 SYSTRAN has or will provide to Customer a Customer Information Manual, which is a guide to policy and procedures concerning daily submission of The Bill(s), collection efforts, and other matters. The Customer Information Manual (the "Manual") is not part of this Agreement. The procedures set forth in the Manual are only guidelines to ensure the efficient operation of SYSTRAN's purchase of The Bill(s). SYSTRAN may change any procedure in the Manual at any time, and may choose not to follow procedures in the Manual at its discretion.

3. FEE(S)

3.1 SERVICE FEE(S). Customer shall pay a fee of the face amount of all of The Bill(s) purchased by SYSTRAN as reflected on Exhibit A attached hereto (the "Service Fee(s)"). The Service Fee(s) shall be payable upon the purchase of any of The Bill(s) by SYSTRAN, and SYSTRAN may collect Service Fee(s) either from payments owed to Customer or may bill the Customer periodically. SYSTRAN may, upon prior notice to Customer, change any fee and such change shall be effective upon receipt of the notice to Customer; provided, that SYSTRAN may change the amount of any fee caused by a change in SYSTRAN's cost of funds without prior notice to Customer, but must notify Customer of such change on Customer's next settlement statement. A fee change due to a change in cost of funds will be effective upon the date of the change which will be reflected on Customer's settlement statement. If, at any time during the term of this Agreement, there is an event of default by Customer including, but not limited to, a Federal Tax Lien filed against and attaching to the property of Customer or any of its principals, and the tax lien is satisfied to allow continued funding pursuant to this Agreement, SYSTRAN shall increase all of Customer's Service Fee(s) by no less than one-half of one percent (0.5%) discount fee on the face of The Bill(s).

3.2 MINIMUM FEE. In the event that Customer fails to sell to SYSTRAN the Minimum Anticipated Volume in any month, Customer shall pay a minimum fee to SYSTRAN which shall be equal to the amount obtained when the Minimum Anticipated Volume is multiplied by the current Service Fees reflected on Exhibit "A" attached hereto and as referenced in section 3.1 above, or as amended by SYSTRAN from time to time as reflected in Customer's daily settlement statement (the "Minimum Fee"). The Minimum Fee owing by Customer pursuant to this paragraph may be deducted from Customer's funding. In the event that Customer fails to sell the Minimum Anticipated Volume per month for each of any two consecutive months (the "Low Volume Period"), Customer's Service fee will be increased at the beginning of the month immediately following the Low Volume Period at SYSTRAN's discretion. At SYSTRAN's discretion, the Service Fee will be returned to the last fee in effect should Customer's monthly purchase volume exceed the Minimum Anticipated Volume per month for each of two consecutive months.

3.3 ADDITIONAL SERVICES and VALUE FEES. From time to time during the term of this Agreement, Customer may request SYSTRAN to provide additional services and/or incur additional risk. Such additional services and/or additional risk shall include but not be limited to advances to the Customer by SYSTRAN which are not in conformity with the terms of the Agreement, extension of Customer's contractual recourse under the Agreement, purchases by SYSTRAN of bills which are outside of the formulas and calculations defined in the Agreement (hereinafter such services shall be collectively referred to as the "Additional Services"). Customer shall pay SYSTRAN the cost for added value for such Additional Services (hereinafter referred to as the "Value Fee (s)"). The Values Fee(s) will be reflected on Customer's daily settlement statement.

3.4 PAYMENT OF ATTORNEYS' FEES. As a condition of Systran agreeing to enter into this Post-Petition Factoring Agreement, Customer has agreed to pay, and shall pay, Systran's reasonable attorneys' fees incurred in the preparation of this and related documents and otherwise incurred in the Bankruptcy Case. Such attorneys' fees are an additional part of the fees charged, and payment of them shall be secured by the post-petition lien granted hereunder and shall be part of Systran's administrative expense allowed hereunder. Systran may choose to collect these attorneys' fees either from payments due Customer or may bill Customer periodically.

4. DEPOSIT

4.1 In order to secure Customer's Obligations hereunder, Customer shall deliver to SYSTRAN a deposit equal to fifteen percent (15%) of Customer's Bills that are ninety (90) days old or less computed from date of purchase ("Deposit").

4.2 ADJUSTMENT OF DEPOSIT. The amount of Customer's Deposit will be reviewed and, if necessary, adjusted each day. Increases in the amount of Customer's Deposit will be withheld by SYSTRAN from payments to Customer. If sufficient Bills are not purchased to fund the increase, Customer will pay the amount of the increase upon demand. Decreases will be repaid to Customer from Customer's Deposit amount.

4.3 REPAYMENT OF DEPOSIT. Upon termination of the Agreement, (a) SYSTRAN may increase the Deposit percentage to 100%, in its sole discretion, and (b) all other sums that may become due to Customer by SYSTRAN will be included in the Deposit. Any shortfall in the Deposit shall bear interest at the rate of four percent (4%) per month.

4.4 ADMINISTRATIVE EXPENSE. Systran shall receive a superpriority administrative expense under 11 U.S.C. § 364(c) in the Customer's bankruptcy estate for all sums owed by the Customer to Systran arising hereunder, including without limitation Systran's reasonable attorneys' fees as described in Section 3.4 above. The Customer shall not seek or permit the award of any other administrative expense under 11 U.S.C. §§ 330, 331, 503(b), 506(c) or 507(a), or any other applicable law, having priority over the claim or right of Systran to an administrative expense hereunder in the Bankruptcy Case.

5. SECURITY INTEREST

5.1 The purchase of The Bill(s) of Customer by SYSTRAN is absolute, subject to the right to Chargeback. In no event shall the purchase of Bills hereunder be construed as a loan. In addition to the outright ownership of The Bill(s) purchased by SYSTRAN, to secure the payment and performance of Customer's Obligations to SYSTRAN, Customer grants SYSTRAN a security interest in, and lien on, any and all now owned or hereafter acquired or created assets of Customer, including without limitation all Customer's present and future Bill(s) and Special Purchase Bill(s), accounts, inventory, deposit accounts, chattel paper, contract rights, insurance contracts and proceeds, general intangibles, choses in action, equipment, instruments, real estate and fixtures, and documents, and the proceeds of the foregoing, including proceeds in the form of inventory and/or equipment, whether tangible or intangible, wherever located together with any and all cash and non-cash proceeds and products and accessions of the forgoing (the "Collateral"). Such security interest is granted pursuant to 11 U.S.C. § 364(c)(2), and Customer shall not grant or permit to be granted any senior lien in said collateral senior in dignity to Systran's security interest granted hereunder.

5.2 FINANCING STATEMENTS. Customer shall not execute or file any financing statement, supplements or amendments thereto, or any other instruments or security agreement covering the Collateral described above in favor of anyone other than SYSTRAN. Customer shall execute and deliver to SYSTRAN any financing statements, title documents, supplements hereunder or the priority of such security interest. CUSTOMER AUTHORIZES SYSTRAN TO SIGN ITS NAME TO ANY SUCH FINANCING STATEMENT AND FILE SAME IN CUSTOMER'S NAME COVERING THE COLLATERAL. Customer shall pay all costs of filing such statements or instruments with appropriate governmental authorities together with the costs of all lien searches. Customer agrees that either a carbon, photocopy, or other reproduction of this Agreement is sufficient as a financing statement under this Agreement.

5.3 SYSTRAN may, in its sole discretion, elect to discharge any security interest, lien or other encumbrance upon any of The Bill(s) for services rendered or goods sold purchased by SYSTRAN. Any such payments and all expenses incurred in connection therewith shall be treated as a Chargeback. Notwithstanding the foregoing, SYSTRAN shall have no obligation to discharge any such security interest, lien or encumbrance.

6. RECOURSE, DISPUTES AND CHARGEBACKS

6.1 All of The Bill(s) are purchased by SYSTRAN from Customer with Recourse. All of The Bill(s) may be Chargedback to Customer at any time after ninety (90) days for a Commercial Account and steamship companies, and ninety (90) days for Transportation Account(s) after the purchase date of The Bill(s) if not collected from Debtor within such period or at any time, if SYSTRAN determines, in its sole discretion, that The Bill(s) is not collectible. All of The Bill(s) owing by Canadian Debtors or logistics companies are subject to Chargeback sixty (60) days from the date of purchase by SYSTRAN. All Special Purchase Bills are subject to Chargeback sixty (60) days from the date of purchase by SYSTRAN. SYSTRAN shall not deem a disputed Bill or Special Purchase Bill uncollectable without allowing Customer a reasonable time to settle the dispute not to exceed fourteen (14) days from notice of dispute. It is within SYSTRAN's discretion as to when The Bill(s) over such time periods may be Chargedback to Customer.

6.2 SYSTRAN reserves the right, however, from time to time and at its absolute discretion, to Chargeback to Customer any of The Bill(s) which do not conform to the representations and warranties set forth in the Agreement or are discovered not to conform with the reasonable standards which SYSTRAN may set for The Bill(s). SYSTRAN shall have a continuing security interest in any and all of The Bill(s) which are Chargedback to the Customer. Chargeback of any of The Bill(s) does not authorize Customer to collect any outstanding sum owing on The Bill(s) from a Debtor.

6.3 COLLECTION OF BILLS. SYSTRAN may, but is not required to, commence any action, including legal action, to collect The Bill(s). All costs of collection, including attorney fees, court fees, and costs of investigation, will be charged to the Customer. Prior to any event of default by a Debtor, SYSTRAN will commence litigation only with Customer's authorization. Subsequent to an event of default, SYSTRAN may file suit as it deems necessary without Customer's authorization. In the event of default, Customer hereby grants authorization to SYSTRAN to settle or compromise any freight bill dispute, including litigation, with any uncollected amount being subject to Chargeback, together with all other amounts for which Customer is obligated to SYSTRAN.

6.4 CLEARANCE DAYS. Clearance Days shall mean (i) three (3) business days for checks drawn on banks located within the United States and for all electronic funds transfers, and (ii) three (3) business days for all other payments. For all purposes and computations under this Agreement, Clearance Days will be added to the date on which any payment is received by SYSTRAN.

7. WARRANTIES AND REPRESENTATIONS

7.1 Customer warrants and represents with respect to all of The Bill(s) sold to SYSTRAN that (a) The Bill(s) are genuine and in all respects what they purport to be; (b) Customer has good title to The Bill(s) and The Bill(s) are free and clear of all encumbrances, liens and prior claims, and that the Customer has the legal right to sell The Bill(s); (c) Customer has no knowledge of any fact which may impair the validity of The Bill(s) or make them uncollectible in accordance with its terms and face amount; (d) for transportation Customers, The Bill(s) were made in accordance with the laws and the regulations of the Federal Highway Administration or other federal regulatory agency, and the appropriate state regulatory commission or made according to lawful and valid contracts which Customer has executed; (e) for transportation Customers, The Bill(s) are supported by lawful, effective and complete bills of lading or other contract of carriage together with bona fide, genuine, valid and signed delivery receipts, and Customer will not modify or delete any of the terms of the original Bills or Special Purchase Bills or bill of lading with respect to same; (f) there are no counterclaims or setoffs or defenses existing in favor of the Debtor, whether arising from the services provided or goods sold which are the subject of The Bill(s) or otherwise and there has been no agreement as to the issuance or granting of any discount on The Bill(s); (g) The Bill(s) are not a duplicate of and do not cover the same services provided or goods sold as a Bill or Special Purchase Bill previously purchased by SYSTRAN from the Customer or billed directly by the Customer to the Debtor; (h) Customer does not own, control, or exercise dominion over the business of any Debtor whose Bills or Special Purchase Bills are factored by Customer to SYSTRAN, Customer is not a subsidiary of any Debtor and no Debtors control or exercise dominion over the business of Customer; (i) Customer will not under any circumstances or in any manner whatsoever interfere with any of SYSTRAN's rights under this Agreement in connection with SYSTRAN's factoring of The Bill(s); (j) Customer has not and will not pledge the credit of SYSTRAN to any person or business for any purpose whatsoever; (k) for non-transportation Customers, until the sale by Customer to Debtor of the goods described in The Bill(s), Customer had good title to the goods sold, the goods were free of all encumbrances, liens and prior claims, and Customer had the legal right to sell the goods.

7.2 If the Customer is a corporation, partnership or limited liability company, it is duly organized, existing, and in good standing under the laws of Illinois. If Customer represents him or herself to be a sole proprietorship or a partnership, such representation shall be deemed conclusive and binding upon Customer. Customer is duly qualified to do business and is in good standing in every other state in which such qualification is required. If Customer is a corporation, partnership or limited liability company, execution, delivery and performance hereof are within its corporate or entity powers, have been duly authorized, and are not in contradiction of law or the terms of its charter, by-laws, partnership agreement, operating agreement or other entity papers, or any indenture, agreement or undertaking to which it is a party or by which it is bound, except that Customer may not enter into this Post-Petition Factoring Agreement absent the approval of the Bankruptcy Court. In addition, the Customer has all licenses and certificates necessary for the operation of its business and the issuance of The Bill(s).

8. AUTHORITY

Customer irrevocably authorizes SYSTRAN or any person designated by SYSTRAN to: bill, receive and collect all amounts which may be due or become due to Customer from Debtors and to use Customer's name for purposes of billing and collection of amounts due; delete Customer's address on all invoices mailed to Debtor and substitute SYSTRAN's address; receive, open and dispose of all mail addressed to Customer or Customer's trade name at SYSTRAN's address; negotiate checks received in payment whether payable to Customer or to SYSTRAN, endorse the name of Customer or Customer's trade name on any checks or other evidences of payment that may come into the possession of SYSTRAN on The Bill(s) purchased by SYSTRAN and on any invoices or other document relating to any of The Bill(s); in Customer's name, or otherwise, demand, sue for, collect and get or give releases for any and all monies due or to become due on The Bill(s); compromise, prosecute, or defend any action, claim or proceeding as to The Bill(s) purchased by SYSTRAN; take all steps necessary to ensure payment of such amounts due and do any and all things in Customer's name necessary and proper to carry out the purpose intended by this Agreement.

9. ADDITIONAL DOCUMENTS

The Customer shall execute and deliver all such additional and further instruments as may be reasonably requested by SYSTRAN in order to more completely vest in and assure to SYSTRAN and make available to it, the property and rights herewith or hereafter granted or assigned and transferred to SYSTRAN as Collateral and to evidence the sale of The Bill(s) to SYSTRAN and to carry into effect the provisions and intent of this Agreement.

10. LOCATION OF BOOKS AND RECORDS, PLACE OF BUSINESS

Customer's place of business is the one set forth in this Agreement and all of its books, accounts, correspondence, papers and records pertaining to the services performed or sales of products are located there, and all such books, accounts, correspondence, papers and records will be opened for SYSTRAN's inspection at all reasonable times.

11. INDEMNIFICATION OF SYSTRAN; SALES AND EXCISE TAXES

Customer will indemnify and hold SYSTRAN harmless against any and all liability, loss or expense, including attorney's fees and costs, caused by or arising out of any claims or alleged claims asserted relating in any manner to The Bill(s) purchased by SYSTRAN hereunder or subject to SYSTRAN's security interest, including, but not limited to, claims asserted against SYSTRAN pursuant to Chapter 5, Title 11 of the *United States Code*. In the event any sales or excise taxes are imposed by any state, federal or local authorities with respect to any of The Bill(s) sold and assigned hereunder, where such taxes are required to be withheld or paid by SYSTRAN, Customer shall also indemnify SYSTRAN and hold it harmless with respect to all such taxes and hereby authorizes SYSTRAN to charge to Customer's account any such tax that is paid or withheld by SYSTRAN. SYSTRAN may charge the Deposit or initiate legal proceedings to collect any amount due under this paragraph. This paragraph shall survive and remain effective following the termination of the Factoring Agreement.

12. **FINANCIAL INFORMATION**

So long as Customer factors or has any absolute or contingent obligation of any kind owing to SYSTRAN, the Customer will provide information regarding the business, affairs and financial condition of Customer and its subsidiaries as SYSTRAN may reasonably request, including financial statements.

13. **BANKRUPTCY**

Customer agrees to notify SYSTRAN of any voluntary or involuntary bankruptcy petition filed by or against it or any guarantor within twenty-four (24) hours of such filing.

14. **REORGANIZATION, ACQUISITIONS, CHANGE OF NAME OR LOCATION**

Customer will not, and will not permit any subsidiary to merge or consolidate with or into any corporation or other entity, or sell, lease, transfer, or otherwise dispose of all or any substantial part of its assets, whether now owned or hereafter acquired. Customer shall notify SYSTRAN in writing not less than thirty (30) days prior to (a) any change of its name or use of any trade names; or (b) any change in the address of the chief executive office and/or chief place of business of Customer or the location of any records pertaining to The Bill(s).

15. **LITIGATION**

Except as disclosed in writing, Customer represents and warrants to SYSTRAN as follows: There are no suits or proceedings pending or to the knowledge of Customer, threatened against or affecting Customer or any of its subsidiaries which, if adversely determined, would have a material adverse effect on the financial condition or business of Customer and its subsidiaries and there are no proceedings by or before any governmental commission, board, bureau, or other administrative agency pending or, to the knowledge of Customer, threatened, against Customer or any of its subsidiaries. Further, Customer represents and warrants there is no claim, loss contingency, or proceeding, whether or not pending, threatened or imminent, against or otherwise affecting Customer that involves the possibility of any judgment or liability not fully covered by insurance or that may result in a material adverse change in the business, properties, or condition, financial or otherwise, of Customer. The parties, however, acknowledge that Customer is the debtor in the Bankruptcy Case.

16. **TRADE NAMES**

Customer represents and warrants to SYSTRAN that it utilizes no trade names or assumed business names in the conduct of its business except NBCCAT Corporation and/or NBCCAT Corporation dba XMGM Company and/or dba National Intermodal Services and/or National Intermodal Services of Illinois and/or National Intermodal Services – Chicago Depot and/or National Intermodal Services – St. Louis and/or dba Transnational Parts.

17. **TAXES; BANKRUPTCY REPORTS**

Customer represents and warrants to SYSTRAN that: (a) Customer has filed all federal, state, and local tax returns and other reports it is required to file, (b) has paid or made adequate provision for payment of all such taxes, assessments, and other governmental charges, and (c) has filed an will file all reports and other papers required to be filed in the Bankruptcy Case, and has paid and will pay all fees required to be paid in the Bankruptcy Case.

18. **TERM AND TERMINATION**

18.1 This Agreement is for a term of thirty-six (36) full months to begin on the Commencement Date as defined in paragraph 1(c) herein. The term of this Agreement shall renew automatically for consecutive twelve (12) month terms unless sooner terminated in accordance with the terms of the Agreement. Customer may terminate this Agreement effective at the end of any term by giving thirty (30) days prior written notice to SYSTRAN at the address set forth in this Agreement. Customer may continue to offer any of The Bill(s) to SYSTRAN during such thirty (30) day period. SYSTRAN may terminate this Agreement at any time and for any reason by notifying Customer in writing of such termination.

18.2 All of Customer's representations, warranties, and other provisions of this Agreement shall survive such termination until SYSTRAN has been paid in full and Customer has fully performed all of its obligations. In addition, should any transfer of money or property to SYSTRAN hereunder be avoided in a bankruptcy proceeding involving Customer, any Debtor of Customer, or otherwise, then Customer's Obligations hereunder shall be reinstated and/or supplemented to the extent of the avoided transfer, whether or not this Agreement has otherwise been terminated.

18.3 Notwithstanding the foregoing, Customer has the option to terminate this Agreement prior to the end of any term by giving SYSTRAN thirty (30) days prior written notice. Customer may continue to offer any of The Bill(s) to SYSTRAN during such thirty (30) day period. Customer shall be deemed to have terminated this Agreement prior to the end of any term on the date that Customer shall have ceased presenting The Bill(s) to SYSTRAN in the normal course for an uninterrupted period of thirty (30) days ("Deemed Termination"). Upon notice of early termination, or the date of a Deemed Termination by Customer, prior to the end of any term, whether or not Customer continues to offer The Bill(s) to SYSTRAN during the thirty (30) day notice period applicable to Customer, Customer shall be obligated to pay to SYSTRAN, and Customer's Deposit may be charged, an early termination premium ("Early Termination Premium") in an amount as noted in the Addendum, or the then current Service Fee specified in Section 3.1 or any subsequent amendment to Section 3.1, whichever fee is greater, times the dollar volume of The Bill(s) purchased by SYSTRAN during the month in which Customer's dollar volume of The Bill(s) purchased by SYSTRAN was the greatest multiplied by the number of months remaining in the then current term, or eleven (11) months, whichever is lower.

18.4 Any partial month remaining in the current term shall constitute a full month for the purpose of calculating the Early Termination Premium. In addition, if SYSTRAN buys Bills from Customer as part of a Special Purchase Bill, and should Customer terminate this Agreement within the first four (4) months of the term of this Agreement, Customer's Deposit shall be charged an Early Termination Premium in the amount of the balance of the Deposit on the termination date. The termination date shall be thirty (30) days after SYSTRAN's receipt of the termination notice or on the Deemed Termination date, unless a termination notice specifies a date that is more than thirty (30) days but less than sixty (60) days after SYSTRAN's receipt of the termination notice.

18.5 If SYSTRAN terminates this Agreement prior to the end of any term upon any default in the performance of Customer under this Agreement, in view of the impracticality and extreme difficulty in ascertaining actual damages and by mutual agreement of the parties as to the reasonable calculation of SYSTRAN's lost profits as a result thereof, Customer shall be obligated to pay SYSTRAN upon the effective date of such termination, and Customer's Deposit may be charged, a premium in an amount equal to the Early Termination Premium as set forth above. If Customer terminates this Agreement pursuant to the terms thereof, Customer shall immediately remit and pay to SYSTRAN, at the time of termination, all Obligations due and owing to SYSTRAN and/or its affiliates by Customer, under this and any other Agreement.

19. **EVENTS OF DEFAULT**

19.1 The following shall be events of default under the terms of this Agreement: (a) default by Customer in the performance of any Obligation to SYSTRAN or any other financial institution or bank; (b) Customer agrees to the appointment of a receiver for its assets, makes general assignment for the benefit of creditors or declares that it is unable to pay its debts as they mature; (c) any representation or warranty made by Customer to Systran is found to be false or misleading; (d) the Bankruptcy Case is dismissed or converted to a Chapter 7 liquidation, or a Trustee is appointed in the Bankruptcy Case; (e) any involuntary petition under the *Bankruptcy Code* or similar statute has been filed against the Customer and not dismissed within sixty (60) days after filing without the entry of an order for relief; (f) the issuance of an attachment, execution, tax assessment or similar process against the

Customer or its property which is not released within ten (10) days of its attachment; (g) any change in the conditions, financial or otherwise, of the Customer which reasonably causes SYSTRAN to deem itself insecure.

19.2 In addition to all other remedies provided by law, upon the occurrence of an event of default, SYSTRAN may immediately, and without notice to the Customer, (i) terminate this agreement, and (ii) increase the amount of the Deposit required under Section 4 of this Agreement to one hundred percent (100%) of the outstanding amount of Bills purchased from the Customer ("100% Deposit"), and the Customer shall immediately deliver to SYSTRAN funds sufficient to create this 100% Deposit.

19.3 SYSTRAN may, upon default under the Agreement or any of the agreements, collect any Obligation owing to SYSTRAN or any of its affiliates by debiting Customer's account, attach any funds owing to Customer by SYSTRAN or its affiliates, and exercise any other remedy available to SYSTRAN under the Agreements or at law. Any deficiency arising under this Agreement shall accrue interest at the annual rate of twelve percent (12%) or the highest amount allowed by law, whichever is higher, from the date the deficiency is incurred.

19.4 In addition to the above, in the event of a default hereunder, and in addition to all other remedies available in law or equity, Systran may declare all amounts owed hereunder to be due and payable immediately, and it may commence a lawsuit in a court of competent jurisdiction for the purpose of collecting such sums. Systran also may, in its discretion and without waiving any other remedy it may have, immediately set off against the sums it is owed all amounts held in the Deposit, without the necessity of obtaining a stay relief or other order from the Bankruptcy Court.

## 20. EXPENSES

20.1 Customer shall reimburse SYSTRAN for all fees, costs and expenses incurred by SYSTRAN in relation to this Agreement. SYSTRAN may, at any time, and without regard to any remedy listed above, demand from Customer payment of the outstanding fees, costs and expenses.

20.2 ATTORNEYS' FEES. With respect to any default under this Agreement, Customer shall reimburse SYSTRAN for all costs and expenses incurred by attorneys, including both SYSTRAN's in-house attorneys and outside attorneys' and paralegals' whether or not a lawsuit or other court action is actually filed in connection with the event of default. In the event that a suit, action, arbitration, or other proceeding of any nature, including, without limitation, any proceeding under *The Bankruptcy Code*, any action seeking a declaration of rights or an action for rescission is instituted to interpret or enforce this Agreement, including, but not limited to such fees and costs associated with trial and appeals, Customer agrees to pay the reasonable attorneys' fees incurred in connection with any such proceeding as awarded by the court.

20.3 OTHER PROFESSIONALS AND EXPERTS. With respect to any event of default under this Agreement, SYSTRAN in its sole discretion may retain accountants, auditors, appraisers and other experts and the Customer agrees to pay the professional fees, expert fees and all other fees and costs reasonably and actually incurred in connection with the services provided.

20.4 NO LIEN TERMINATION WITHOUT RELEASE. In recognition of SYSTRAN's right to have its attorneys' fees and other expenses incurred in connection with this Agreement secured by the Collateral, notwithstanding payment in full of all Obligations by Customer, SYSTRAN shall not be required to record any terminations or satisfactions of any of SYSTRAN's liens on the Collateral unless and until Customer has executed and delivered to SYSTRAN a general release in a form reasonably satisfactory to SYSTRAN. **Customer understands that this provision constitutes a waiver of its rights under 9-513 of the UCC.**

**20.5 JURY TRIAL WAIVER. IN RECOGNITION OF THE HIGHER COSTS AND DELAY WHICH MAY RESULT FROM A JURY TRIAL, THE PARTIES WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING HEREUNDER, OR (B) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT HERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND EACH PARTY FURTHER WAIVES ANY RIGHT TO CONSOLIDATE ANY SUCH ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED; AND EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY HERETO MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.**

## 21. JURISDICTION AND VENUE

This Agreement shall be deemed to be a contract under the laws of the State of Oregon and for all purposes shall be governed by and construed in accordance with the laws of that state. Customer irrevocably agrees that any legal action or proceeding brought by or against Customer with respect to the Agreement shall be brought in the courts of the State of Oregon or in the U.S. District Court for the District of Oregon. Customer consents to the jurisdiction of such courts and that the venue for any such action shall be the County of Clackamas. This provision shall not limit the right of SYSTRAN to bring such actions or proceedings against Customer in the court of such other states or jurisdictions where Customer may be subject to jurisdiction. Customer expressly authorizes service of process in any such suit or action on its behalf upon Registered Agent: William J. Strons, at (address) 1755 S. Naperville Rd. Ste 500, Wheaton, IL 60187 or upon such other agent as SYSTRAN may approve in writing, as its agent for such purposes and that service may be deemed complete upon delivery via expedited national overnight delivery service. Responses to any such lawsuit by Customer must be filed and served within twenty (20) days after receipt of service of process. As used herein, process shall be deemed received upon the earlier of (i) actual receipt of process, as evidenced by an executed certified mail return, and (ii) ten (10) days after the date on which process is mailed by Systran. This section shall remain effective upon the resignation of Registered Agent, or upon the Registered Agent's change of address, except the address to which process can be mailed shall be changed if Systran is informed in writing, prior to the mailing of any process, of a new Registered Agent or address to which process should be mailed.

## 22. WAIVER, NOTICE

The waiver by SYSTRAN of the breach of any term of this Agreement or of the compliance therewith shall not be construed as a waiver of any other breach or compliance. Notices from either party to the other shall be given in writing and mailed postage prepaid, registered or certified mail, or placed in the hands of a national overnight delivery service, addressed to the addresses set forth opposite each party's name below, or at such other address as either party may hereafter advise the other in writing.

## 23. ASSIGNMENT

Customer may not assign any of its rights or obligations hereunder. SYSTRAN may assign or grant a security interest in this Agreement or in any of The Bill(s) purchased by SYSTRAN. SYSTRAN may assign any of its rights and remedies with respect to The Bill(s) including the right to notify Debtors to make payment to SYSTRAN's assignee.

## 24. SEVERABILITY

The provisions of this Agreement are severable and if any of these provisions shall be held by any court of competent jurisdiction to be unenforceable such holding shall not affect or impair any other provisions hereof.

**25. COMPLETE UNDERSTANDING**

This Agreement comprises the complete understanding among the parties and may only be varied by a writing executed by the parties hereto. Paragraph headings are for convenience only.

**26. THIRD PARTY CONSULTATION**

Customer hereby agrees and acknowledges that it has had the opportunity to seek out and consult with legal counsel and/or independent business advisors of its own choosing in connection with the negotiation, execution and delivery of this Agreement. This Agreement shall be construed without regard to any presumption or rule requiring that it be construed against the party causing this Agreement, or any part hereof to be drafted.

**27. NO OFFER/COMMITMENT**

The presentation of this Agreement to Customer does not constitute either an offer or commitment to purchase The Bill(s) or to extend credit to Customer.

**28. CREDIT INFORMATION**

Customer authorizes SYSTRAN or any of its affiliates to obtain credit bureau reports, and make other credit inquiries that it determines are necessary. On Customer's written request, SYSTRAN will inform Customer whether SYSTRAN has requested a consumer credit report and the name and address of any consumer credit reporting agency that published a report. Customer acknowledges that without further notice SYSTRAN may use or request additional credit bureau reports to update its information so long as Customer obligations to SYSTRAN are outstanding.

**29. GUARANTORS**

The parties acknowledge that Randy C. Schwoeble, John T. Williams, Jr., Charles T. Genoar, Remare Transportation Corporation and RTC Acquisitions Company, LLC have executed Continuing Guaranties or Collateralized Guaranties of the obligations of Customer arising hereunder, and that Systran would not enter into this Post Petition Factoring Agreement without said personal guaranties.

SYSTRAN FINANCIAL SERVICES CORPORATION

By: ______________________

Title: ______________________

Date: ______________________

Address: 4949 SW Meadows Drive
Suite 500
Lake Oswego, Oregon 97035

NBCCAT Corporation

By: ______________________

Title: ______________________

Date: ______________________

Address: 1800 W. 43rd St.

Chicago, IL 60609

Witness:

By: ______________________

Print Name: ______________________

Address: ______________________

______________________

Phone: ______________________

Witness:

By: ______________________

Print Name: ______________________

Address: ______________________

______________________

Phone: ______________________

**EXHIBIT "A"**
**TO FACTORING AGREEMENT DATED ________, 2005**

The terms used in this Exhibit A have the same definitions as those used in the Factoring Agreement. In case of conflict of definition, the definitions in this Exhibit "A" shall prevail.

Customer shall pay a fee at an annual rate equal to prime plus four percent (4.0%) of all funds employed to purchase Bills ("Prime Plus Fee"). Prime is defined as the prime rate as announced by Wells Fargo Bank, N.A. Funds employed shall be calculated by SYSTRAN on a daily basis based upon bills unpaid and outstanding, less the deposit. The above Prime Plus Fee may be deducted from Customer's funding for Bills purchased pursuant to the Factoring Agreement or Systran may bill Customer. A change in the Prime Plus Fee due to a prime rate change will be effective upon the date of the change, which will be indicated on the settlement statement.

Customer shall pay a closing fee (the "Closing Fee") in the amount of $18,750.00, to be deducted from funds due Customer on the first day of funding to Customer by SYSTRAN. Customer shall also pay an annual line fee of one and five tenths percent (1.5%) of the Maximum Approved Credit Line (the "Annual Line Fee"). The Annual Line Fee shall be deducted from Customer's funding on the anniversary date of the first funding date, annually.

In addition to the Service Fees and pursuant to sections 3.1 and 3.2, SYSTRAN shall charge and Customer shall pay a monthly collateral monitoring fee of $2,000.00 per month (the "Collateral Monitoring Fee") to be deducted from Customer's funding on the first funding date, and thereafter on the first day of each calendar month.

A managed account shall also be created for all Bills that Systran is unable to purchase and all Bills which Customer does not want to factor (the "Managed Account"). Customer shall pay one-tenth of one percent (.10%) of the face amount of all Managed Account Bills ("Managed Account Fee"). The deposit on the Managed Account is 100%.

________
Initial

**ADDENDUM TO THE FACTORING AGREEMENT DATED_______, 2005**

This Addendum is to the Factoring Agreement (the "Agreement"), dated _________ __________, 2005 between Systran Financial Services Corporation ("SYSTRAN") and NBCCAT Corporation (the "Customer").

- **Section 2, entitled, "Purchase of Bills", paragraph 2.4 of the Agreement to include the following:**
  Customer may mail all Bills directly to account debtors. All Bills so directly mailed by Customer must be stamped with SYSTRAN's notice of assignment attached as noted below. Customer will provide copies of all Bills, together with signed copies of the respective proof of delivery prior to SYSTRAN considering them for purchase. Nothing in the Addendum shall obligate SYSTRAN to purchase any Bill owing by the account debtors, listed above. Customer must obtain SYSTRAN's consent prior to adding any account debtors to the list of direct mailed parties.

Remit Only To:
Systran Financial Services Corp.
PO Box 890928
Dallas, TX 75389-0928
This account is sold, assigned and payable to SYSTRAN.

- **Section 4.1 of the Agreement shall be modified as follows:**
  In order to secure Customer's Obligations hereunder, Customer shall deliver to SYSTRAN a deposit equal to eighteen percent (18%) of Customer' Bills that are ninety (90) days old or less computed from date of purchase ("Deposit").

- **Paragraph 12 of the Factoring Agreement shall be amended to include the following:**
  Customer shall deliver to SYSTRAN, within ninety (90) days following the close of each of its fiscal years, Customer's audited financial statements, certified by a recognized firm of certified public accounts acceptable to SYSTRAN as having been prepared in accordance with generally accepted accounting principles and as presenting fairly the financial condition of Customer as of the date thereof and for the period then ended (and including a management letter to Customer from such accounts). Customer shall also deliver to SYSTRAN monthly accounts payables listings and monthly internal financial statements within thirty (30) days following the close of each of the calendar months or calendar.

  One or more employees or agents of SYSTRAN may perform field examinations of the books, records and other assets of Customer. SYSTRAN shall perform such field examinations each quarter (4 times each year), unless Customer shall default under the terms of the Factoring Agreement. Customer shall pay to SYSTRAN a field examination fee (the "Field Examination Fee") in an amount equal to $750 for each day spent by each such employee or agent in performing and/or summarizing the results of such examination (including all necessary travel time) plus all "out of pocket" expenses. Each Field Examination Fee shall be payable by Customer to SYSTRAN, in whole or in part, as appropriate, on the date(s) on which such field examination was performed.

- **Paragraph 18.3 of the Factoring Agreement shall be amended in the following particulars only:**
  Notwithstanding the foregoing, Customer has the option to terminate this Agreement prior to the end of any term by giving SYSTRAN thirty (30) days prior written notice. Customer may continue to offer any of The Bill(s) to SYSTRAN during such thirty (30) day period. Customer shall be deemed to have terminated this Agreement prior to the end of any term on the date that Customer shall have ceased presenting The Bill(s) to SYSTRAN in the normal course for an uninterrupted period of thirty (30) days ("Deemed Termination"). Upon notice of early termination, or the date of a Deemed Termination by Customer, prior to the end of any term, whether or not Customer continues to offer The Bill(s) to SYSTRAN during the thirty (30) day notice period applicable to Customer, Customer shall be obligated to pay to SYSTRAN, and Customer's Deposit may be charged, an early termination premium ("Early Termination Premium") equal to three percent (3%) of the Maximum Approved Credit Line if made prior to the first anniversary of this Agreement, two percent (2%) of the Maximum Approved Credit Line if made prior to the second anniversary of this Agreement and one percent (1%) of the Maximum Approved Credit Line if an early termination occurs at any point thereafter and prior to the end of the then current term.

The parties agree that the terms of this Addendum shall be incorporated in terms of the Agreement. All defined terms in the Addendum shall have the same meaning as the defined terms in the Agreement.

________
Initial

**NBCCAT Corporation**
**Cash Collateral Budget as of May 10, 2005**

| | Weeks Ending 05/13/05 | 5/20/2005 | 5/27/2005 | 6/3/2005 | 06/10/05 | Weeks Ending 06/17/05 | 06/24/05 | 07/01/05 | 07/08/05 | 07/15/05 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Receipts:** | | | | | | | | | | |
| From System** | 148,000 | 148,000 | 148,000 | 148,000 | 148,000 | 148,000 | 148,000 | 148,000 | 148,000 | 148,008 |
| Cash sales | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 |
| **Total Cash Receipts** | 154,500 | 154,500 | 154,500 | 154,500 | $154,500 | $154,500 | $154,500 | $154,500 | $154,500 | $154,500 |
| **Cash Outflows:** | | | | | | | | | | |
| Payroll | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 |
| Parts Purchases | 40,000 | 40,000 | 40,000 | 40,000 | $35,000 | $35,000 | $36,000 | $35,000 | $35,000 | $35,000 |
| Subcontract Labor | 7,500 | 7,500 | 7,500 | 7,500 | $17,500 | $20,000 | $20,000 | $20,000 | $17,500 | $15,000 |
| Fuel-Customer | | | | | | | | | | |
| Equip Leases | 5,100 | 835 | 1,035 | 1,830 | $935 | $6,100 | $1,035 | $1,800 | $936 | $5,130 |
| Equip Repairs | 506 | 500 | 500 | 500 | $750 | $750 | $750 | $750 | $750 | $750 |
| Fuel | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 |
| Worker Comp Ins | | 10,600 | | | | $10,000 | | | | |
| Officer Life Insurance | | | | | | | | | | |
| Liability Ins | | 18,000 | | 3,900 | $16,000 | | | $3,900 | | 18000 |
| Benefits-Union | | | | | | | | | | |
| Benefits-Non Union | | 1,300 | 12,000 | | | $1,300 | $10,000 | | | |
| Shop Supplies | 2,000 | 2,000 | 2,800 | 2,000 | 2,009 | 2,800 | 2,000 | 2,000 | 2,000 | 2,000 |
| Uniforms | 768 | 760 | 780 | 780 | $765 | $760 | $780 | $740 | $750 | $780 |
| Legal | | | 13,000 | | | | | | | |
| Accounting | | 2,400 | | | | | | $2,400 | | |
| Access Fees | | 2,000 | | | | $2,000 | | | | 2800 |
| Scavenger | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 |
| Office Supplies | | | | 600 | | | $600 | | | 600 |
| Phones | | 4,500 | | 2,000 | | $4,500 | | $2,600 | | 4500 |
| Utilities-Gas and Electric | 4,500 | | | 4,600 | | | | | | |
| Rents-RTC | | | 7,500 | | | | $7,500 | | | |
| Rents-Landlords | 22,500 | 5,700 | 13,000 | 21,350 | $22,502 | $4,400 | | $21,358 | $35,280 | $3,316 |
| Property Taxes | | | | | | | | | | |
| Security | | | | | | | | | | |
| Postage | 800 | | | | 6820 | | | | 809 | |
| Travel | 2,000 | | 1,000 | 1,000 | | | $1,300 | | | $1,800 |
| Sales Taxes | | 1,000 | | | | | $350 | | | |
| IRS Payment | | | | 5,000 | | $5,000 | | | | $5,000 |
| **Total Cash Outflows** | 142,310 | 151,245 | 151,945 | 147,360 | 152,895 | 147,460 | 135,645 | 146,410 | 149,885 | 147,675 |
| **Net Change in Cash** | 12,190 | 3,255 | 2,555 | 7,140 | 1,605 | 7,040 | 18,895 | 8,090 | 4,815 | 6,826 |
| **Beginning Cash Balance** | 0 | 12,160 | 15,445 | 18,000 | $25,140 | $26,745 | $33,785 | $52,640 | $60,730 | $65,545 |
| **Ending Cash Balance** | 12,190 | 15,445 | 18,000 | 25,140 | 26,745 | 33,785 | 52,640 | 60,730 | 65,545 | 72,370 |

Note: Payroll is Gross Payroll plus Employer Payroll Tax Expense.

**Note: the funding from Systran is discretionary as provided in the Factoring Agreement. Nothing in the budget should be deemed or construed to be a firm commitment that System will be funding such amounts.